**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**A.R., Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 17, 2009.
Filed Jan. 15, 2010.
Reargument Denied March 23, 2010.

Vincent P. DiFabio, Paoli, for appellant.

Nicholas J. Casenta, Jr., Assistant District Attorney, West Chester, for Commonwealth, appellee.

BEFORE: PANELLA, POPOVICH, and COLVILLE *, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant A.R.[1] appeals the judgment of sentence entered on January 5, 2009, in the Court of Common Pleas of Chester County, following the revocation of his probationary sentence. On appeal, Appellant claims that the evidence was insufficient to support the trial court's conclusion that Appellant violated his probation and that the trial court erred in admitting into evidence the results of a therapeutic polygraph examination as supportive evidence at Appellant's violation of probation (VOP) hearing. Upon review, we affirm.

---

* Retired Senior Judge specially assigned to the Superior Court.

1. Due to the sensitive nature of the issues presented in this case, we have substituted Appellant's name with his initials in order to protect the identity of the victim.

¶ 2 The relevant facts and procedural history of this case were set forth fully by the trial court in its Pa.R.A.P.1925(a) opinion, filed March 19, 2009, as follows:

On October 4, 2006, [the trial court] found [Appellant] guilty after a bench trial of two counts of [18 Pa.C.S.A. § ] 6312(b) Sexual Abuse of Children; two counts of § 7507.1(1)[,](2) Invasion of Privacy; and one count of § 7512(a) Criminal use of a Communications Facility for videotaping his thirteen-year-old stepdaughter in the bathroom, in various stages of undress, including complete nudity. At trial, [Appellant] admitted he had done so, but contended that his motivation was to embarrass her, and correct her behavior for having twice entered his bedroom while he was naked, once when he was asleep, and again with one of her girlfriends while he was naked. He contended that he had complained to his wife about this conduct, but she was unreceptive to his concerns. [Appellant] thereafter admittedly video-taped his stepdaughter and left the video where his wife would find and view it, supposedly forcing her to take affirmative action to correct her daughter's conduct. [The trial court] did not credit [Appellant's] testimony concerning his motivation. [Appellant's wife] did take action, but not of the kind [Appellant] envisioned, as his wife called the police who, upon appropriate investigation, arrested and charged [Appellant] with the offense[s] of which he was convicted. [Appellant] and his wife have subsequently divorced. Following [Appellant's] conviction on October 4, 2006, pursuant to the provisions of Megan's Law [III], 42 Pa.C.S.A. § 9791 *et seq.*, on October 5, 2006, [the trial court] ordered the Sexual Offender's [Assessment] Board to perform an assessment of [Appellant] required by Section 9795.4 to determine whether [Appellant] was a

sexually violent predator. The Board determined [that] he was not [a sexually violent predator]. [ . . . ]. On January 17, 2007, [the trial court] sentenced [Appellant] to concurrent sentences of 2 years probation on each of the Sexual Abuse counts, concurrent sentences of 1 year probation on each of the Invasion of Privacy counts, consecutive to the Sexual Abuse counts, and a consecutive term of 6 months probation on the Communication Facility count. A specific condition of probation was that Appellant [was to] undergo a sex offender evaluation and follow all treatment recommendations. [Appellant] did not appeal his convictions or sentences.

Trial court opinion, 3/19/2009, at 1–3.

¶ 3 Barry Zakireh, Ph.D., Appellant's sex offender evaluator, recommended that Appellant needed to participate in mandated sex offender treatment with an emphasis on treatment of Appellant's denial and justification behavior, which consisted, in part, of the use of therapeutic polygraph examinations when necessary. Dr. Zakireh stated in his evaluation that Appellant portrayed characteristics that were receptive to treatment but that he also minimized his actions and that he underreported his level of sexual attraction to the victim and the planning of his behavior.

¶ 4 Appellant attended the Chester County Sex Offender Program (the Program), which offered the aforementioned types of treatment required by Dr. Zakireh, but, during the Program's initial 12–week orientation period, Appellant continued to deny a sexual motivation for his offenses. Therefore, the Program's mental health professionals administered a therapeutic polygraph to identify Appellant's risk behaviors and to promote his honesty in treatment. During the test, Appellant was asked ten questions, three of which were "relevant questions" that

sought to unveil the motivation for the offenses for which he was convicted. Appellant was asked the following questions: (1) whether he lied about his intentions for making the videos; (2) regarding the videos, whether he lied about his intent; and (3) whether he made the videos for a sexual reason.[2] For each of these questions, Erik Abel, the test evaluator, concluded that Appellant provided deceitful answers.

¶ 5 At the conclusion of the test, the Program's mental health professionals continued to question Appellant regarding his motivations for making the videos of his stepdaughter. However, Appellant continued his pattern of justifying his behavior and denying the sexual motivation underlying that behavior. Thereafter, Heidi Halloway, the Program's supervisor, discharged Appellant from the program due to the lack of progress in his treatment. John Morton, Appellant's probation officer, concluded that Appellant's discharge from the program was a violation of the conditions of his probation, and he filed a probation violation petition with the trial court.[3]

¶ 6 The trial court conducted a VOP hearing on November 18, 2008, where it received evidence from Mr. Morton, Ms. Halloway, Mr. McHenry, and Mr. Abel. The trial court received evidence of the results of Appellant's therapeutic polygraph examination through Mr. Abel's written report and his testimony. After its consideration of the evidence presented at the VOP hearing, the trial court found that Appellant was in violation of his probation requirements, and it revoked Appel-

lant's probation. The trial court sentenced Appellant to an aggregate sentence of three years of reporting probation, with the specific conditions that Appellant was to complete the Program and that he was to undergo polygraph examinations to monitor his compliance.

¶ 7 Appellant filed a timely notice of appeal to this Court following the trial court's imposition of sentence. The trial court ordered Appellant to file a concise statement of errors on appeal pursuant to Pa.R.A.P.1925(b), and he complied. Thereafter, the trial court authored an opinion that addressed the issues presented in Appellant's concise statement.

 ¶ 8 Appellant contends first that the evidence was insufficient for the trial court to conclude that he violated his probation. Our review of this issue is governed by the following standard:

> The Commonwealth establishes a probation violation meriting revocation when it shows, by a preponderance of the evidence,[4] that the probationer's conduct violated the terms and conditions of his probation, and that probation has proven an ineffective rehabilitation tool incapable of deterring [the] probationer from future antisocial conduct.

*Commonwealth v. Ahmad*, 961 A.2d 884, 888–89 (Pa.Super.2008) (citations and quotation marks omitted).

¶ 9 Appellant contends that the initial probation requirements imposed upon him did not require him to admit "that he videotaped his stepdaughter for [purposes

---

2. The questions were asked in different ways to ensure accuracy in testing.

3. It must be noted that Appellant procured the services of Arthur S. McHenry, a private licensed psychologist, for counseling sessions. Appellant attended 25 sessions as of the date of the VOP hearing. However, Mr. McHenry is not a sex offender therapist.

4. The "preponderance of the evidence" is the lowest burden of proof in the administration of justice, and it is defined as the "greater weight of the evidence, *i.e.*, to tip a scale slightly [in one's favor]." *Raker v. Raker*, 847 A.2d 720, 723 (Pa.Super.2004).

of] sexual gratification." Appellant's brief, at 18. Appellant maintains that he never admitted to such a fact and that his failure to do so caused the probation department to file a violation petition automatically.

¶ 10 We begin with the observation that it is correct that Appellant did not "admit" to videotaping his stepdaughter for purposes of obtaining sexual gratification at trial, but it is inapposite to the matter before this Court. The trial court *convicted* Appellant of sexual abuse of children, which contains "sexual gratification" as the *mens rea* component of the offense. *See* 18 Pa.C.S.A. § 6312(b). Thus, as a matter of law, the Commonwealth has proven beyond a reasonable doubt that Appellant did, in fact, desire to gratify himself sexually by videotaping his stepdaughter, despite his testimony to the contrary. Consequently, as this fact was established by Appellant's conviction and encapsulated within a valid final judgment, *i.e.*, his unchallenged judgment of sentence, Appellant is collaterally estopped from relitigating the question of his *mens rea* at the time of the offense. *See Commonwealth v. Gant*, 945 A.2d 228, 229 (Pa.Super.2008) (elements of collateral estoppel). As such, Appellant's admission, or lack thereof, has no bearing on our present analysis.

¶ 11 Further, the record reflects that the probation department filed a probation violation petition against Appellant because he failed to comply with the requirement that he obtain the treatment recommended in the sex offender evaluation by Dr. Zakireh. To explicate, Appellant's initial probation requirements mandated him to obtain a sex offender evaluation and to comply with all treatment recommendations flowing from that evaluation, which included participation in a program that focused on treating Appellant's denial and justification behavior and that administered therapeutic polygraph examinations to assist in treatment. This type of treatment was afforded to Appellant *via* the Program, and Appellant does not dispute that his subsequent treatment with Mr. McHenry[5] did not meet these objectives. Appellant was discharged from the Program due to his failure to progress in treatment, *i.e.*, from his inability to admit in treatment the sexual gratification motive underlying his convictions. Appellant steadfastly denied any sexual gratification motive in his acts, despite his convictions of the offenses, and he continued to offer varying justifications for his acts. This pattern of denial and justification caused Ms. Halloway to discharge Appellant from the Program. Thus, it was Appellant's absence from *recommended* treatment that resulted in his violation of the requirements of his sentence of probation. Therefore, we are satisfied that the evidence was sufficient for the trial court to find that Appellant was in violation of his probation, and, as such, Appellant's issue fails. *Ahmad*, 961 A.2d at 888–89.[6]

---

5. Appellant's procurement of the services of Mr. McHenry after being discharged from the Program did not permit him to meet the requirements of his probationary sentence independently. Mr. McHenry lacks special training as a sex offender therapist, and he has not been involved in the treatment of sex offenders for 20 years, and, as stated above, there was no evidence presented at the VOP hearing to indicate that Mr. McHenry's course of treatment abided by the precise recommendations set forth by Dr. Zakireh in his evaluation.

6. Inasmuch as the trial court imposed a probationary sentence and not incarceration following Appellant's VOP hearing, we need not consider whether the technical nature of Appellant's violation was flagrant and indicative of an inability to reform. *See, e.g., Commonwealth v. Carver*, 923 A.2d 495, 498 (Pa.Super.2007) (holding that technical violations of

■ ¶ 12 Next, we consider whether the trial court erred by admitting into evidence the results of the therapeutic polygraph examination at the VOP hearing. Our review indicates that the state of the law of this Commonwealth with regard to the administration of therapeutic polygraph examinations in sex offender probation cases sanctioned the trial court's admission of the evidence in this factual circumstance.

■ ¶ 13 The general rule in this Commonwealth is that any reference to a polygraph test that raises an inference concerning the *guilt* or *innocence* of a defendant is inadmissible at *trial*. *Commonwealth v. Hetzel*, 822 A.2d 747, 767 (Pa.Super.2003) (emphasis added). This rule derives from the inherent unreliability of polygraph examinations in the determination of innocence or guilt in fact. *Id.*, 822 A.2d at 767. However, a VOP hearing is not a trial and, as such, does not deal with questions of "guilt" or "innocence" as those terms are understood commonly in the criminal law. *See, e.g., Commonwealth v. Castro*, 856 A.2d 178, 181 (Pa.Super.2004) (citation omitted). Indeed, the degree of proof necessary to achieve revocation of an offender's probation is far less than that required to sustain a criminal conviction, and evidence not normally admissible at trial, or even necessarily criminal in nature, may be presented by the Commonwealth to meet this burden. *Id.*, 856 A.2d at 181.

■ ¶ 14 Our recent holding in *Commonwealth v. Shrawder*, 940 A.2d 436 (Pa.Super.2007), approved the use of therapeutic polygraph examinations as a tool in probation-related sex offender therapy. While *Shrawder* did not deal with the present question before this Court, *i.e.*, whether the results of a therapeutic polygraph examination can be admitted into evidence at a VOP hearing, we conclude that a reasonable reading of *Shrawder* and our previous precedent regarding probation revocation proceedings indicates that, with certain caveats, therapeutic polygraph evidence may be admitted as supportive proof of a violation of a condition of a sexual offender's therapy-related probation requirements. *See, e.g., Shrawder*, 940 A.2d at 443; *see also Castro*, 856 A.2d at 181.

¶ 15 As discussed above, the results of Appellant's therapeutic polygraph examination did not form the sole basis for Appellant's probation revocation. The facts are not in dispute; Appellant denied consistently any sexual gratification motive for his conduct throughout the course of his evaluation and treatment, despite the fact that he was convicted of an offense that contained a *mens rea* element of sexual gratification. Stemming from Appellant's consistent denials, the Program administered a therapeutic polygraph examination to Appellant in order to confront him with his disingenuous behavior and attempt to steer him back to proper treatment, which required admission of the sexual nature of his activities.

¶ 16 We are interested in the fact that the ultimate administration of the therapeutic polygraph examination by the Chester County Sex Offender Program to Appellant was foreshadowed by the record established at the hearing conducted by the trial court on February 7, 2007, regarding Appellant's undocketed motion for clarification of his probation requirements. The February 7, 2007 hearing indicates that Appellant sought to preclude the ad-

---

probation may support sentence of total incarceration where violations are flagrant and

indicative of inability to reform).

ministration of any therapeutic polygraph examination because he never "admitted" to the sexual gratification component of sexual abuse of children, despite his conviction. *See* N.T. Hearing, 2/7/2007, at 12. In response to Appellant's motion, the Commonwealth presented the testimony of Appellant's probation officer, who explained that the purpose of the therapeutic polygraph examination was to verify information provided by a defendant to the Program, and, if the defendant cannot or will not admit to the behavior reflected factually in their conviction, the therapeutic polygraph examination was used as a means to reevaluate the defendant's treatment. *Id.*, at 11, 15. The probation officer explained that the Chester County Probation department did not file a petition for violation of probation solely on the basis of a sexual offender's "failing" of a therapeutic polygraph examination in the Program, due to the well-documented unreliability of polygraph examinations. *Id.*, at 15. Upon our consideration of the facts established at the probation revocation hearing and at the February 7, 2007 hearing, we conclude that the administration of the therapeutic polygraph examination was a "last ditch" attempt to keep Appellant *in* treatment, rather than having been the reason for his ultimate discharge.

¶ 17 Importantly, the record indicates that the therapeutic polygraph examination evidence was not used to establish Appellant's *commission* of any offense or used as an investigative tool to ferret out any uncharged criminal conduct on the part of Appellant. Therefore, the concerns presented by *Shrawder* regarding potential violations of Appellant's Fifth Amendment privilege against self-incrimination are not present in this case. *See, e.g., Shrawder*, 940 A.2d at 442–43. Rather, the record demonstrates that the therapeutic polygraph examination evidence was used by the Commonwealth to drive home the fact that Appellant was not yet fully amenable to treatment (a requirement of his probationary sentence) due to his persistent denials of the sexual gratification component of his criminal activity. Thus, in conformity with Shrawder, we conclude that where, as here, sexual offender treatment programs limit the use of the therapeutic polygraph examination to confront an offender with his own disingenuous statements regarding the activity that led to his conviction, the results obtained from the therapeutic polygraph examination do not undermine an offender's liberty interests but, instead, encourage him to face the deviant behavior that has already been established in fact at the guilt-phase of trial and encourage him to accept treatment for it. *Id.*, 940 A.2d at 443.

¶ 18 Consequently, we find that the results obtained from the administration of a therapeutic polygraph examination in a sexual offenders' treatment program are admissible at a probation revocation hearing as evidence to support the *underlying* violation, *i.e.*, a sexual offender's lack of amenability to treatment, so long as the results of that examination are not the sole basis for the revocation petition; they do not reveal uncharged criminal conduct on the part of the defendant; and they are not used for purposes of the investigation of criminal conduct. *See, e.g., Shrawder*, 940 A.2d at 443; *see also Castro*, 856 A.2d at 181. Accordingly, as the record indicates that the Commonwealth did not use the results of the therapeutic polygraph examination for these purposes, we conclude that the trial court did not err by admitting the evidence of the results of Appellant's therapeutic polygraph examination. *See, e.g., Shrawder*, 940 A.2d at 443; *see also Castro*, 856 A.2d at 181. Therefore, Appellant's issue fails.

¶ 19 As Appellant's issues fail, we affirm the judgment of sentence of the trial court.

¶ 20 Judgment of sentence affirmed.

¶ 21 COLVILLE, J. files a Dissenting Opinion.

## DISSENTING OPINION BY COLVILLE, J.:

¶ 1 As it is undisputed that Appellant did not successfully complete his court-ordered sexual offender treatment, I agree with the Majority that there was no error in the sentencing court's revocation of probation on that basis based on the record before it. However, I believe the polygraph examination results considered by the sentencing court were improperly admitted; thus, I would vacate the judgment of sentence and the order revoking probation and remand to the sentencing court for new revocation proceedings.

¶ 2 The Majority tailors for its purposes the "general rule" on the inadmissibility of polygraph examination results. In my view, the general rule does not contain limitations on its application; rather, it is simply:

> [The Pennsylvania Supreme] Court has repeatedly and consistently held that **the results of a polygraph examination are inadmissible for any purpose in Pennsylvania** because the scientific reliability of such tests has not been sufficiently established.

*Commonwealth v. Gee*, 467 Pa. 123, 354 A.2d 875, 883–84 (1976) (emphasis added).

¶ 3 Because our Supreme Court has declared polygraph examination results inadmissible for any purpose, I do not believe they were admissible in this case.

¶ 4 However, even assuming the above-stated rule of inadmissibility is limited to trial situations, the reasoning behind it remains. The change in context does not change the unreliability of the examination results. Our Supreme Court has also held:

> The controlling consideration at a [violation of probation] hearing is "whether the facts presented to the court are probative and **reliable** and not whether traditional rules of procedure have been strictly observed."

*Commonwealth v. Mullins*, 591 Pa. 341, 918 A.2d 82, 85 (2007) (citation omitted) (emphasis added).

¶ 5 Thus, the admission of polygraph examination results, which are considered notoriously unreliable by Pennsylvania courts, at a proceeding where the controlling consideration is reliability of the evidence, cannot be legally supported.[1] Accordingly, I dissent.

---

1. Further, even if I were to agree the examination results are admissible, I do not understand or agree with the Majority's self-designed test for admissibility. I particularly do not endorse the unsupported requirement that the examination results may not be the sole basis for the revocation petition. That situation obviously did not arise in the instant case, where passing a polygraph examination was not a condition of Appellant's probation. However, it remains unexplained why a factfinder would be permitted to consider evidence for a specific purpose but would be handicapped in its assignment of weight to that evidence in that consideration.