J-S84021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KENDALL GARLAND | |
| Appellant | No. 1646 EDA 2014 |

Appeal from the Judgment of Sentence Dated May 30, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0804261-2001

BEFORE:  OLSON, J., SOLANO, J., and FITZGERALD, J.[*]

MEMORANDUM BY SOLANO, J.:                    **FILED February 27, 2017**

Appellant Kendall Garland appeals from the judgment of sentence following the trial court's determination that he violated his probation. On appeal, he contends the evidence was insufficient. We affirm.

In 2002, Appellant pleaded no contest to aggravated indecent assault and corruption of minors. **Commonwealth v. Garland**, 3027 EDA 2008 (Pa. Super., Oct. 30, 2009) (unpublished mem. at 1).[1] He was sentenced to two-and-a-half to six years' incarceration followed by nine years' reporting probation. **Id.** The sentencing order and commitment form specified that, among other things, Appellant was to receive drug and alcohol counselling

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3125, 6301.

and sexual assault counselling. Order, 8/7/02; Ct. Commitment, 8/7/02. Appellant did not file a direct appeal from his judgment of sentence. *Garland*, 3027 EDA 2008, at *1.

Appellant filed Post Conviction Relief Act (PCRA) petitions in 2003 and 2006, which were dismissed by the PCRA courts as untimely. This Court affirmed both dismissals. *See Commonwealth v. Garland*, 3254 EDA 2004 (Pa. Super., Mar. 7, 2006) (unpublished memorandum), *appeal denied*, 911 A.2d 933 (Pa. 2006); *Garland*, 3027 EDA 2008.

At a hearing on December 21, 2007, regarding Appellant's second PCRA petition, the trial court revisited Appellant's conditions of probation and parole. N.T., 12/21/07, at 3. Noting that Appellant originally was ordered at sentencing to obtain sex offenders treatment and evaluation at the Joseph J. Peters Institute ("JJP"), *id.* at 10,[2] the court ordered Appellant to "stay away from NUDE [*sic*] bars, have no association with minors and complete JJ Peters." Order, 12/21/07.

On December 13, 2011, Appellant's probation was continued after a violation-of-probation hearing. Order, 12/13/11. The order again specified that Appellant was to "[c]ontinue treatment at JJ Peters Institute and stay out of trouble." *Id.*

---

[2] The record variously refers to the Institute as "JJP," "JJPI," "JJ Peters," and "JJ Peters Institute." The Institute is a treatment center for sex offenders in Philadelphia. *See* N.T., 5/30/14, at 28.

In July, 2012, Appellant signed a form entitled "Standard Special Conditions for Sex Offenders."[3] The first condition stated:

> You must obtain a sex offender evaluation from a sex offender treatment provider who is approved by probation/parole supervision staff. You must comply with and successfully complete all treatment recommendations including polygraph examinations, resulting from this evaluation. You must pay the cost of the evaluation, polygraph(s) and treatment. You must also provide written authorization for release of confidential information between your sex offender treatment provider and the Pennsylvania Board of Probation and Parole.

Conditions, 7/23/12, at ¶ 1.

On May 6, 2014, Appellant was arrested for violating his probation, which is the subject of the instant appeal. N.T. 5/30/14, at 22. The Commonwealth sought to have Appellant incarcerated as a result of the violation.

At his violation-of-probation hearing on May 30, 2014, during which Appellant was represented by counsel, Dage Gardner, an agent for the Pennsylvania Board of Probation and Parole, testified that Appellant violated the terms of his probation when he was unsuccessfully discharged from JJP.[4]

_____

[3] It is unclear from the certified record what sequence of events led to Appellant signing the form in 2012.

[4] Officer Gardner testified that Appellant also might have violated his probation by registering an incorrect e-mail address, but he expressed doubt about that conclusion and said that errors in Appellant's e-mail address could have been due to a clerical error. N.T. 5/30/14, at 4-5. Officer Gardner stated:

*(Footnote Continued Next Page)*

Appellant was discharged from the treatment program because he failed a polygraph examination regarding sexual contact with minors and sexual contact with prostitutes. ***See id.*** at 3-4. Officer Gardner stated that the polygraph test was given to Appellant because he denied having committed a sexual offense,[5] and because he and Appellant's therapist believed there were inconsistencies between statements Appellant made during therapy and his actions. ***Id.*** at 9-12. According to Officer Gardner, Appellant initially refused to take the polygraph test. ***Id.*** at 10. Officer Gardner observed that Appellant had been in treatment programs for approximately one-and-a-half years and had made no progress towards rehabilitation in that time. ***Id.*** at 6. The trial court pointed out that this was Appellant's third round of sex offender treatment, after having previously been in the same program in

_(Footnote Continued)_ _____

> [Appellant] failed to register his email as required by Megan's Law. He did register his email address as required, but had missing scores or missing letters so his email didn't match – his email address didn't match the email he was using.
>
>     . . . I kind of looked into it and, you know, whoever put it in or registered him could have made a mistake on that. So that could be – I can't really . . . ascertain if he did it on purpose and/or if we made a mistake.

***Id.*** at 4-5.

[5] It is unclear from the testimony whether Officer Gardner was asserting that Appellant denied committing the original offense for which he was sentenced, or a subsequent offense after his release from incarceration.

- 4 -

2007 and 2011 and failing to complete the requirements for successful discharge either time. N.T., 5/30/14, at 6-7.[6]

Appellant testified that he has been fully cooperative with the treatment program's requirements since 2007 and has not committed any new offenses while on probation. N.T., 5/30/14, at 15-17. Appellant stated that he did not intend to refuse to take the polygraph test, but, because his probation officer at the time had called him by someone else's name and had mentioned an unrelated LinkedIn account, Appellant initially attempted to clarify the request for the examination. *Id.* at 16. Appellant claimed that he was not asked during the polygraph examination about the underlying offense, which he has never denied, but was asked only about his current sexual activity. *Id.* at 16-17.[7] Appellant asserted that he answered truthfully

_____

[6] The trial court reviewed Appellant's Supervision History from 2011, which, in discussing Appellant's unsuccessful discharge from the treatment program at that time, stated:

> [T]he offender will only discuss one of his . . . sex offenses and denies the other. The offender also avoids discussing a third arrest that was sexual in nature. Group facilitators indicate that the offender needs to maintain stable housing in order to lower his risk and have more community stability.

N.T., 5/30/14, at 18-19, 25. Officer Gardner testified that Appellant was reincarcerated in 2011 for accessing or possessing pornographic materials. *Id.* at 25. Appellant, however, stated that he was unsuccessful in completing the treatment program in 2011 due to a relapse in alcohol abuse. *Id.* at 19.

[7] "[T]hey asked me about current sexual activity, if I had any girlfriends or anything like that." N.T., 5/30/14, at 17.

during the test and should not have failed. *Id.* at 33. Appellant also argued that he was not discharged from the program; he went to a treatment meeting on a Monday, scheduled his next meeting for Wednesday, and was arrested on the Tuesday in between. *Id.* at 32-33.[8] If it had not been for the arrest, Appellant claims, he would have continued attending the treatment program.

The trial court read into the record an excerpt from Appellant's latest supervision history, which stated that in 2013, Appellant obtained employment building a database for a website that assists children with school work. N.T., 5/30/14, at 20-21. Appellant explained that he believed he was permitted to work on this website so long as he disclosed his past offense to his employer and did not have any contact with children, and he maintained that he complied with both requirements. *Id.* at 22-23.[9]

_____

[8] It is unclear on what date Appellant took and failed the polygraph exam. We note that Officer Gardner stated that he was notified of the failure and discharge on May 5, 2014, which was a Tuesday, although Appellant's testimony implies that his failure occurred prior to his scheduling of the Wednesday meeting. *See* N.T., 5/30/14, at 4.

[9] Appellant's probation requirements mandated that he "not obtain employment . . . that places [him] in a position where [he is] in charge of or have control, power or authority over vulnerable persons without the prior written approval of probation/parole supervision staff and if in treatment, in agreement with [his] treatment provider. Vulnerable persons are defined as . . . anyone under the age of 18." Conditions, 7/23/12, at ¶ 13. It is unclear from the testimony whether the probation officers or the court considered his employment with the website to amount to a technical violation.

The 2013 supervision history also stated that Appellant "admitted he was not attending DNA at Minsec, nor was he attending AA meetings." N.T., 5/30/14, at 21.[10] Appellant also had a storage unit which contained a computer,[11] and the supervision history said Appellant had lied to his probation officer about the status of the computer and about when and why he went to the storage unit. *Id.*[12] Appellant testified that there was a misunderstanding about his use of the storage unit due to his homeless

_____

[10] The references apparently were to treatment programs for substance and alcohol abuse.

[11] One of Appellant's probation requirements was that he "provide probation/parole supervision staff unlimited access to any computer or other multimedia device in [his] possession . . . and allow probation/parole supervision staff to search all programs and records maintained on any computer or such other device in [his] possession." Conditions, 7/23/12, at ¶ 14.

[12] The report read:

> [Appellant was] asked to produce keys to a storage unit. Initially denied having his access card and keys, but these items were eventually provided. Upon searching the unit we were able to find a computer that had a cracked screen, which [Appellant] had earlier indicated to [a probation officer] that he could not produce because it was broken. However, he tried to explain he still uses it despite its being broken.
>
> [Appellant] also questioned as to the last time he visited his unit. He responded he went there in the morning. After speaking with U-Haul, it was revealed he scanned in at 3:58 p.m. [Appellant] continued to lie about why and when he went to his storage unit.

N.T., 5/30/14, at 21.

status, and that the contents of the computer he kept there were never searched by probation officers. *Id.* at 23-24.

Appellant lives in a homeless shelter, and, according to Officer Gardner, Appellant claimed to go only to: (1) that shelter where he lived, (2) another shelter that had computers, so that he could do homework, and (3) a train station, to use a wireless Internet connection. N.T., 5/30/14, at 25-26. Officer Gardner expressed the belief that Appellant did not try to get a job so that he could remain homeless, N.T., 5/30/14, at 26, and he also expressed concern about Appellant's travels to the train station because Appellant "would be at the station house where kids and everybody else roam and do things." *Id.* at 26. Although Appellant testified that that he obtained a degree as a computer programmer after he was placed on probation, *id.* at 22, Officer Gardner stated that he never saw evidence that Appellant graduated from such a program. *Id.* at 26. Officer Gardner also raised questions about financial anomalies regarding Appellant. *Id.* at 25-26.[13] Officer Gardner stated, "[Appellant] keeps his progression being held back so he can stay in the transient state so he can do what he wanted to do." *Id.* at 27.

---

[13] Officer Gardner said that searches of Appellant's belongings revealed ledgers referencing thousands of dollars that Appellant could not adequately explain, and that Appellant has "a bunch" of credit cards. N.T., 5/30/14, at 26-27. Officer Gardner stated that Appellant told him he "dips and dabs in trading stocks and things like that." *Id.* at 26.

At the conclusion of the hearing, the court stated

I don't think that there is anything else that the Court needs to hear on this case. You are asking for leniency. The Commonwealth is asking for incarceration because you've had three attempts now with [JJP]. . . . But you have not been able to complete this program despite three attempts and that causes concern, in addition to the other concerns that have been expressed by [the] officer agent. . . . I do have great concerns concerning particularly the nature of the offense and the many reasons why . . . [Appellant] has been unable to successfully complete treatment.

N.T. 5/30/14, at 27-31. The trial court found Appellant in violation of the terms of his probation, revoked Appellant's sentence of probation, and resentenced him to one to two years' incarceration followed by five years' reporting probation. Trial Ct. Op, 9/17/15, at 1.

On June 3, 2014, even though he was still represented by counsel, Appellant filed a timely *pro se* notice of appeal. Thereafter, there was an extremely long delay in transmittal of the certified record to this Court; much of that delay was caused by confusion in the trial court regarding Appellant's counseled status.[14] The trial court filed a Rule 1925(a) opinion on

_____

[14] The trial court explained:

On June 3, 2014. Defendant filed a *pro se* Notice of Appeal from the May 30, 2014 sentencing order. On August 8. 2014, the docket reflected that the Superior Court was in receipt of Defendant's *pro se* appeal, although Defendant was represented by Court appointed counsel, Lawrence J. Bozzelli. Esq. ("Mr. Bozzelli"). A copy of the receipt was sent to the Defendant's attorney of record.

*(Footnote Continued Next Page)*

September 15, 2015, in which it did not address the merits of Appellant's

issues, but instead stated that the appeal should be dismissed because the

*(Footnote Continued)* ———————————

> On August 28, 2014, Defendant was scheduled for a reconsideration hearing. Defendant's counsel, Mr. Bozzelli, did not appear and Defendant was represented by Robert Muench, Esq., for the purposes of this hearing only. The hearing was continued until September 26. 2014, and Mr. Bozzelli was again appointed to represent Defendant. On September 12, 2014 Defendant was scheduled for a status hearing; Mr. Bozzelli acknowledged his representation of Defendant. On September 26, 2014, Defendant appeared for a video hearing in which he withdrew all pending motions and petitions other than the *pro se* appeal of his May 30, 2014 sentencing order.
>
> On December 12, 2014. Defendant sent a letter to the Superior Court, in which he objected to the delay of his appeal and offered to submit his own record. On December 31, 2014 the Superior Court forwarded Defendant's December 12, 2014 letter to counsel.
>
> On January 20, 2015 Defendant filed a PCRA petition. On January 28, 2015, this office forwarded Defendant's Notice of Appeal to Mr. Bozzelli and inquired if he intended to file a Notice of Appeal on Defendant's behalf as counsel of record. Mr. Bozzelli did not respond.
>
> On July 23, 2015, this office asked the Superior Court to clarify the status of Defendant's appeal. The Superior Court responded to this office by telephone and informed Chambers that Defendant's appeal was an open matter and that the Superior Court was waiting for an opinion pursuant Pa. R.A.P. 1925(a).

Tr. Ct. Op. at 1-2. As the trial court noted, Appellant filed a new PCRA petition to challenge his sentence for the parole violation during this long period of delay. The petition, which as of the date of the transmittal of the record had not been addressed by the trial court, is premature, as it was filed before Appellant's judgment of sentence for his violation of probation became final. **See** 42 Pa.C.S. § 9545.

notice of appeal was impermissibly filed *pro se* while Appellant was represented by counsel. **See** Trial Ct. Op. at 2-3 (citing **Commonwealth v. Jette**, 23 A.3d 1032, 1035 (Pa. 2011); **Commonwealth v. Ellis**, 626 A.2d 1137 (Pa. 1993)). Once the trial court filed its opinion, the record was transmitted to this Court on September 21, 2015.

In November 2015, this Court received Appellant's *pro se* "Motion for Change of Counsel," in which Appellant stated that his appointed counsel had informed him that he would be taking no further action on the matter. On December 8, 2015, this Court remanded this case to the trial court for a **Grazier** hearing to determine the status of Appellant's representation. Mot., 11/10/15; Order, 12/8/15.[15] On February 11, 2016, we received a letter from the trial court which stated that Appellant "withdrew his [**Grazier**] hearing on February 8, 2016," and informed this Court that Appellant would be represented by private counsel on appeal. Letter, 2/11/16. Through counsel, Appellant filed a timely Rule 1925(b) statement of errors

---

[15] We directed the trial court "to conduct an on-the-record determination as to whether the Appellant's waiver of counsel is knowing, intelligent and voluntary, pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998), and to provide written notice of its determination to the Prothonotary of this Court within sixty (60) days of the date that this Order is filed." Order, 12/8/15.

complained of on appeal. **See** Order, 3/9/16; Statement, 3/15/16. The trial

court did not file a responsive Rule 1925(a) opinion.[16]

Appellant raises the following issue:

> Did the Court err by finding [Appellant] in violation of his probation? There was no witness at the violation of probation hearing other than Dage Gardner, State Agent for Pennsylvania Board of Probation & Parole. It was not claimed that [Appellant] committed any sexual act or new allegations of misconduct. [Appellant] was discharged from a sex offenders treatment program after he failed a polygraph test. [Appellant] should have been allowed to enter a treatment program and should not have been found in violation of his probation.

Appellant's Brief at 3.

Appellant contends that his failure of the polygraph test was not

sufficient evidence to establish that he violated his probation. Appellant's

Brief at 12-15. He maintains that he adhered to all the conditions of

probation, no allegations of new misconduct were made, and the only

evidence that he failed a polygraph examination or was unsuccessfully

discharged from therapy hinges on the testimony of one probation officer.

**Id.** Appellant does not challenge the allegation that he failed the polygraph

test or that he has entered the treatment program multiple times and has

yet to successfully complete treatment. Appellant provides no specific

---

[16] We would ordinarily remand this case to the trial court to file a Rule 1925(a) opinion that addresses the merits of the appeal. However, due to the delay of nearly two years that has occurred between Appellant's notice of appeal and the date of this decision, we elect to resolve this case based on the record before us.

response to the other allegations made against him at the hearing regarding, for example, his failure to attend AA meetings.

The Commonwealth maintains that the officer's testimony regarding the failure of the polygraph comprised sufficient evidence for the court to revoke Appellant's probation. **See** Commonwealth's Brief at 12. The Commonwealth bases its argument in part on Appellant's failure to cite any law requiring more than the testimony of one probation officer, and in part on the lower burden of proof needed at a revocation hearing. **Id.** (citing **Commonwealth v. Holder**, 805 A.2d 499, 503-04 (Pa. 2002)). The Commonwealth also argues that the revocation of parole was justified because Appellant failed to register his e-mail address, refused to cooperate with the request for a polygraph test, was not attending meetings, lied about the use of his storage unit, and did work for a website that "was suspect, to say the least." **Id.** at 8-11.[17]

Whether there was sufficient evidence for the trial court to revoke Appellant's probation is —

> a question of law subject to plenary review. We must determine whether the evidence admitted at [the hearing] and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all elements of the [violations]. A reviewing

---

[17] The Commonwealth also erroneously contends that Appellant failed to register his employment for the website. Commonwealth's Brief at 10-11. Appellant did register his employment, which led to further inquiry about the position by his probation officers. **See** N.T., 5/30/14, at 20.

court may not weigh the evidence or substitute its judgment for that of the trial court.

***Commonwealth v. Perreault***, 930 A.2d 553, 558 (Pa. Super. 2007) (citation omitted), ***appeal denied***, 945 A.2d 169 (Pa. 2008).

The purpose of a revocation hearing is not to determine whether a probationer committed a new crime, ***Commonwealth v. Castro***, 856 A.2d 178, 180 (Pa. Super. 2004), but "to establish to the satisfaction of the judge who granted probation that the individual's conduct warrants his continuing as a probationer." ***Commonwealth v. Mullins***, 918 A.2d 82, 85-86. (Pa. 2007) (citation omitted).

> Revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion. The Commonwealth establishes a probation violation meriting revocation when it shows, by a preponderance of the evidence, that the probationer's conduct violated the terms and conditions of his probation, and that probation has proven an ineffective rehabilitation tool incapable of deterring probationer from future antisocial conduct.

***Perreault***, 930 A.2d at 557-58 (citations, brackets, and quotation markets omitted). Technical violations of probation "can support revocation and a sentence of incarceration when such violations are flagrant and indicate an inability to reform." ***Commonwealth v. Carver***, 923 A.2d 495, 498 (Pa. Super. 2007). Sentencing courts must employ a very broad standard in determining whether probation has been violated. ***Commonwealth v. Colon***, 102 A.3d 1033, 1041 (Pa. Super. 2014) (citation omitted), ***appeal denied***, 109 A.3d 678 (Pa. 2015). A revocation of probation hearing is a

- 14 -

truncated proceeding that takes place without a jury, with a lower burden of proof, and with fewer due process protections. **Mullins**, 918 A.2d at 85-86 (citations omitted). "Probation is given by grace, not by right." **Id.** at 86.

Applying this standard, we hold Appellant is due no relief. A condition of Appellant's probation was that he "[c]ontinue treatment at [JJP]." Order, 12/13/11. Instead, Appellant was discharged from JJP after he failed a polygraph test that asked about his sexual contact with minors and prostitutes. We understand that Appellant contends that he answered all questions on that test truthfully, but the personnel responsible for JJP concluded otherwise and discharged Appellant, and the trial court treated that discharge as proper and valid. Because Appellant violated this critical term of his probation, the trial court acted within its authority in revoking probation.

The fact that Appellant's discharge was based in part on his failure of a polygraph test does not provide grounds for a different result. We have previously opined that polygraph examinations are —

> an essential tool for a therapist whose job it is to reveal an offender's deception and encourage him or her to confront his or her urges and deviant behavior. The test results further the primary goal of counseling as part of a sexual offender's sentence, which is to rehabilitate the offender and prevent recidivism, with reasonably small incremental deprivations of the offender's liberty.

**Commonwealth v. Shrawder**, 940 A.2d 436, 443 (Pa. Super. 2007). Therefore, where a probationer fails or lies during a mandated polygraph

- 15 -

test or otherwise is shown by the test to have been dishonest with his therapists, and as a result of the test the probationer has been discharged from a therapeutic program that is a required condition of his probation, there is sufficient evidence to revoke his probation.

For example, in **Commonwealth v. A.R.**, 990 A.2d 1 (Pa. Super. 2010), **aff'd**, 80 A.3d 1180 (Pa. 2013), a specific condition of probation was that the probationer would follow all treatment recommendations following his sex-offender evaluation. Those recommendations included that the probationer participate in sex offender treatment, which included the use of therapeutic polygraph examinations. 990 A.2d at 3. The probationer was questioned before, during, and after a polygraph test regarding the sexual motives for the underlying offense for which he had pleaded guilty, which he denied. He failed the test, and was subsequently discharged from the program for his inability to progress in treatment. **Id.** at 3-4. On appeal, the probationer challenged both the admissibility of the polygraph results, because of their unreliability, and the sufficiency of the evidence justifying his revocation. We affirmed. **Id.** at 4-5.

> Regarding sufficiency, we concluded that —
>
> [The probationer's] initial probation requirements mandated him to obtain a sex offender evaluation and to comply with all treatment recommendations flowing from that evaluation, which included participation in a program that focused on treating [the probationer's] denial and justification behavior and that administered therapeutic polygraph examinations to assist in treatment. . . . [The probationer] was discharged from the Program due to his failure to progress in treatment, *i.e.*,

from his inability to admit in treatment the sexual gratification motive underlying his convictions. [The probationer] steadfastly denied any sexual gratification motive in his acts, despite his convictions of the offenses, and he continued to offer varying justifications for his acts. This pattern of denial and justification caused [the probationer's discharge] from the Program. Thus, it was [the probationer's] absence from recommended treatment that resulted in his violation of the requirements of his sentence of probation. Therefore, we are satisfied that the evidence was sufficient for the trial court to find that Appellant was in violation of his probation, and, as such, Appellant's issue fails.

*Id.* at 5 (emphasis omitted).

Regarding the reliability and admissibility of the polygraph test, we opined that —

the results obtained from the administration of a therapeutic polygraph examination in a sexual offenders' treatment program are admissible at a probation revocation hearing as evidence to support the underlying violation, *i.e.*, a sexual offender's lack of amenability to treatment, so long as the results of that examination are not the sole basis for the revocation petition . . .

*Id.* at 7. In **A.R.**, we specified that the polygraph results were **not** the sole basis for the revocation petition, but signified the probationer's overall resistance to treatment:

[The probationer's] probation officer . . . explained that the purpose of the therapeutic polygraph examination was to verify information provided by a defendant to the Program, and, if the defendant cannot or will not admit to the behavior reflected factually in their conviction, the therapeutic polygraph examination was used as a means to reevaluate the defendant's treatment. . . . [The] Probation department did not file a petition for violation of probation solely on the basis of a sexual offender's "failing" of a therapeutic polygraph examination in the Program, due to the well-documented unreliability of polygraph examinations. . . . [W]e conclude that the administration of the therapeutic polygraph examination was a "last ditch" attempt to

- 17 -

> keep Appellant in treatment, rather than having been the reason for his ultimate discharge.

*Id.* at 6-7.[18] The admissibility issue was appealed to the Supreme Court, which held that the admission of the exam —

> was not improper because the results were offered not as evidence of appellant's probation violation, but as background evidence to explain the actions taken by program staff. . . . Accordingly, we affirm the Superior Court's holding that appellant's therapeutic polygraph examination results were admissible at his [violation of probation] hearing for purposes of helping explain the program's actions and the treatment procedures.

*A.R.*, 80 A.3d at 1183-84.[19]

_____

[18] In *A.R.*, we also instructed that the subject of polygraph questioning must to be restricted to the underlying offense for which the probationer was convicted, and not expanded to new, uncharged criminal conduct, in order to protect the probationer's Fifth Amendment rights. *A.R.*, 990 A.2d at 7. As pointed out by the Supreme Court on appeal, that issue was not before us. *A.R.*, 80 A.3d at 1184 n.6. We note that the Fifth Amendment issue has since been addressed by the Supreme Court in *Commonwealth v. Knoble*, 42 A.3d 976 (Pa. 2012), and is not at issue in the instant case.

[19] The Supreme Court clarified in a footnote:

> We do not reach the Superior Court's conclusion that therapeutic polygraph examination results cannot serve as the sole basis for probation revocation. The value to be accorded to evidence is a matter for the fact-finder with a well-settled appellate standard of review. Appellant's probation violation was supported by testimony from several treatment specialists involved in his therapy in addition to the results of his therapeutic polygraph, and we decline to require specific types of evidence in every case.

80 A.3d at 1184 n.6.

Similar to the probationer in *A.R.*, Appellant was required to participate in a specific sex-offender treatment program which required him to be honest with his therapists and to take polygraph examinations as part of his treatment. Appellant was discharged from the program without having successfully completed it, which constituted a technical violation of the terms of his probation, and Appellant's probation was ultimately revoked in large part based on the discharge.[20]

Moreover, the discharge marked just one of a series of treatment failures by Appellant, after two prior unsuccessful rounds of treatment. The trial court expressed concern regarding these repeated failures. The court's reservations about Appellant's progress while on probation were buttressed by the other information provided to the court in the probation report — for example, Appellant's dishonesty with probation officers surrounding the use of his storage unit where he kept a computer, and his failure to attend required meetings.

Appellant's multiple discharges from the program, in addition to the information presented by the probation report, sufficiently support the trial court's conclusion that "probation has proven an ineffective rehabilitation tool incapable of deterring [Appellant from engaging in] antisocial conduct," *Perreault*, 930 A.2d at 558, and that Appellant's violation indicates an

---

[20] Unlike in *A.R.*, the contents of the Appellant's polygraph test were not admitted during the probation violation hearing.

"inability to reform," **Carver**, 923 A.2d at 498. Accordingly, we discern no abuse of discretion or error of law by the trial court in revoking Appellant's probation.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/27/2017