J-S51010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| ARIS WILLIAM HALIDAY | |
| Appellant | No. 1380 EDA 2016 |

Appeal from the Judgment of Sentence April 21, 2016
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0004503-2008

BEFORE: BOWES, J., SHOGAN, J., AND STEVENS, P.J.E.,*

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 20, 2017**

Aris William Haliday appeals from the judgment of sentence of two to four years incarceration, imposed following revocation of Appellant's probation. We affirm.

This matter traces to Appellant's negotiated guilty plea to two counts of indecent assault. On May 29, 2008, Abington Township police officers initiated charges based upon allegations that Appellant had sexually abused his minor female cousins, E.R. and J.R. The Commonwealth subsequently filed a criminal information charging Appellant with fifty-four counts of, *inter alia*, rape of a child, statutory sexual assault, aggravated indecent assault of a child, and indecent assault of a child, spanning the time period October 1, 2005, through April 30, 2008.

_____
* Former Justice specially assigned to the Superior Court.

On January 11, 2010, Appellant agreed to plead guilty to two counts of indecent assault; one graded as a misdemeanor of the first degree, and the other graded as a misdemeanor of the second degree. 18 Pa.C.S. § 3126(a)(7),(8). The differing grades were due to the ages of the victims at the time of the crimes. 18 Pa.C.S. § 3126(b). Appellant agreed during his guilty plea colloquy that, sometime between October 1, 2005, and April 30, 2008, he placed his hand on the vaginal area of both E.R. and J.R. N.T. Guilty Plea, 1/11/10, at 7-8. The parties agreed to a sentence of eleven and one-half months to twenty-three months incarceration, followed by a consecutive four year period of probation. Appellant was subsequently deemed to be a sexually violent predator and received the agreed-upon sentence.

At the violation of probation hearing, Adult Probation Officer Allison Gazzale explained that she became Appellant's supervising probation officer in September or October of 2013. N.T. Violation Hearing, 12/3/15, at 66. On April 22, 2015, she made an unscheduled visit to Appellant's home, where she discovered an adult woman leaving with an infant child. *Id*. at 70. This conduct violated his probation, as Appellant was to have no contact

with children. *Id*. at 71. Appellant was detained for sixty days, and Officer Gazzale stated that the matter "was handled administratively."[1] *Id*.

The second detainer was lodged October 10, 2015. We now set forth the circumstances leading to this detainer, part of which involved the addition of a probationary condition that Appellant claims was unconstitutional. This condition concerned Appellant's contact with Faith Witherspoon, his ex-girlfriend. Officer Gazzale explained that she became aware of Appellant's alleged stalking of Ms. Witherspoon from Mary Young, Appellant's counselor at Specialized Counseling Associates, a Sexual Offender Assessment Board approved provider. Due to that report and Appellant's prior conviction for raping an ex-girlfriend, the probation office determined that a no-contact order was warranted. *Id*. at 43, 67.

On September 21, 2015, Appellant appeared at the probation office as previously scheduled. The officers had decided "to put him on GPS per the information he had relayed to treatment, which was later relayed to us as concerning behavior." *Id*. at 77. Appellant, upon request, supplied

---

[1] Officer Gazalle noted that formal revocation proceedings were not instituted. Instead, she submitted an administrative disposition to her supervisor, Nicholas Honyara, who testified that "we had offered [Appellant] the opportunity, as opposed to coming back before the [c]ourt, to handle his violation administratively[.]" N.T. Violation Hearing, 12/3/15, at 43. The docket shows that a scheduled violation hearing was canceled. The original judge then sentenced Appellant to time served with an additional one year of probation.

addresses for Ms. Witherspoon, as well as the "mother of his child's house." Officer Gazzale instructed Hunter Slugg, Jr., a fellow employee of Montgomery County Adult Probation, to place an electronic monitor on Appellant's ankle. Mr. Slugg established boundaries through the monitor's software surrounding the two addresses supplied by Appellant. On cross-examination, Mr. Slugg confirmed that he did not inform Appellant of the specific areas established in the software. *Id*. at 36.

Mr. Slugg explained that the software reported that Appellant went past Ms. Witherspoon's address in the early afternoon hours of October 10, 2015, at approximately twenty miles per hour, and again at 10:19 p.m. at the speed of one mile per hour. As a result, Mr. Honyara decided to detain Appellant for violating probation. *Id*. at 44. While detained in a holding cell, Appellant made comments to Officer Gazzale indicating that "[Ms. Witherspoon] would see [his presence] as stalking behaviors." *Id*. at 83.

Based on the foregoing conduct, Officer Gazzale initiated formal revocation proceedings, which she explained was based on three independent grounds. First, his failure to adhere to the no-contact order violated his condition that he "abstain from creating a danger to himself or to the community." *Id*. at 76. Second, he had been discharged from Specialized Counseling Associates. *Id*. Third, Appellant had failed to pay fines and court costs.

The Commonwealth also called Ms. Witherspoon, who testified that she and Appellant had dated for approximately four-and-one-half years, breaking up in April, 2014. In late August or early September of 2015, she told him to stop contacting her. *Id*. at 11. Appellant persisted in visiting her apartment, and Ms. Witherspoon saw him about five times in the span of two weeks, always at night. When asked why he visited, Appellant told her he was there "to check on you." *Id*. On one occasion, she took her trash outside and saw Appellant standing between two cars parked directly underneath her window. *Id*. at 15. She reported the incident to the police.[2] *Id*.

Finally, Mary Young testified that Appellant revealed during a session that Ms. Witherspoon told Appellant she felt he was stalking her, prompting Ms. Young's report to the probation officers. *Id*. at 55. Ms. Young also related that Appellant was in denial of his offenses and was argumentative. *Id*. at 52. As a result, Appellant was discharged from counseling.

At the conclusion of the hearing, the judge determined that the Commonwealth had established the first two grounds for violation, but failed with respect to the third.

---

[2] On cross-examination, Ms. Witherspoon admitted that she had contact with Appellant after he received the monitor, including one instance in which he contacted her and picked her up from work. N.T. Violation Hearing, 12/3/15, at 23. She reiterated that she did not want him to come by her home. *Id*.

> Sir, you did basically admit that you knew you were not supposed to be around [Ms. Witherspoon's home]. You can sit there and say that you weren't quite sure whether you could be in the parking lot, it just doesn't pass the smell test as to why you'd be walking around her apartment. I think most definitely that that's a violation.
>
> With regard to number two, quite clearly you were discharged from the program according to the testimony of Ms. Young. According to C-7, the discharge summary for Specialized Counseling Associates, and based on the testimony of Ms. Young, I'm going to find that you were discharged from that and for failing to comply with the approved treatment program.

*Id*. at 101-02.

On April 21, 2016, the court sentenced Appellant to two to four years incarceration. This timely appeal followed, and Appellant raises the following issues for our review.[3]

I. Whether the trial court erred in crediting a condition placed on the probationer by the probation department when no such condition was placed on Appellant by the court, the probation department failed to request the trial court add the condition to the probation.

II. Whether the condition that the Appellant is alleged to have violated is invalid and void for vagueness where there were no distances or metes or bounds placed on the condition.

III. Whether the trial court erred in finding Appellant to be in violation of his probation for failing to complete required treatment where Appellant was discharged from treatment

---

[3] On August 23, 2016, we granted an application for remand to file a supplemental Pa.R.A.P. 1925(b) statement. Upon return of the certified record to this Court, Appellant failed to file a brief. On February 27, 2017, we granted reinstatement of the appeal.

> because he was being held on the aforementioned, invalid
> probation violation.

Appellant's brief at 3.

We explained in **Commonwealth v. Cartrette**, 83 A.3d 1030 (Pa.Super. 2013) (*en banc*), that our scope of review in probation revocation cases encompasses the discretionary aspects of sentencing. When examining a challenge to the validity of the proceedings, we apply the following standard of review.

> Revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion. When assessing whether to revoke probation, the trial court must balance the interests of society in preventing future criminal conduct by the defendant against the possibility of rehabilitating the defendant outside of prison. In order to uphold a revocation of probation, the Commonwealth must show by a preponderance of the evidence that a defendant violated his probation.

**Commonwealth v. Colon**, 102 A.3d 1033, 1041 (Pa.Super. 2014) (quotation marks and citations omitted).

Appellant's arguments assail the validity of the proceeding and do not challenge the trial court's sentencing decision. We first set forth the basic principles governing the trial court's revocation inquiry. "The Commonwealth establishes a probation violation meriting revocation when it shows, by a preponderance of the evidence, that the probationer's conduct violated the terms and conditions of his probation, and that probation has proven an ineffective rehabilitation tool incapable of deterring probationer from future

antisocial conduct." ***Commonwealth v. Ahmad***, 961 A.2d 884, 888 (Pa.Super. 2008). "When assessing whether to revoke probation, the trial court must balance the interests of society in preventing future criminal conduct by the defendant against the possibility of rehabilitating the defendant outside of prison." ***Commonwealth v. Allshouse***, 33 A.3d 31, 37 (Pa.Super. 2011) (quotation marks and citation omitted).

Appellant's arguments are confined to the no-contact requirement, and therefore overlook the fact that his violation of that condition was but one part of a much larger picture, namely, his prior probation violation for being present with a minor and failure to comply with counseling. Therefore, Appellant's position proceeds from the flawed assumption that a violation of the no-contact order was necessary to sustain the trial court's decision.

Having set forth that observation, we now turn our attention to Appellant's specific issues. His first claim is that compliance with the no-contact order was not part of the conditions of probation as it was imposed by the probation office, and not the trial court. "Appellant Haliday first argues that the trial court erred in finding him to be in violation of the terms of his probation for being in the vicinity of Ms. Witherspoon's residence where that condition was never placed upon him by the [c]ourt[.]" Appellant's brief at 10.

This issue has been waived, as Appellant failed to challenge the condition on this basis. Appellant conceded that the probation department

could impose a no-contact order; he simply maintained that the department was required to clearly delineate its geographic bounds.

> Ms. Gazzale . . . told him that he could not be at or around the residence.  At or around is necessarily a vague term, your Honor.  There would have been a very simple solution to this, especially given the fact that Mr. Haliday told Ms. Gazzale that he has family in that area.  All she would have had to do is basically give him something in writing saying Mr. Haliday, you can't be within a certain perimeter of her residence.  But he was not given anything in writing and, furthermore, he was not given any perimeter.  He was just told a very vague term, you can't be at or around her residence.

N.T. Violation Hearing, 12/3/15, at 97-98.

Even if the issue were preserved, Appellant is not entitled to relief.

In **Commonwealth v. Elliott**, 50 A.3d 1284 (Pa. 2012), our Supreme Court analyzed 42 Pa.C.S. § 9754, which states in relevant part:

> **(a) General rule.--**In imposing an order of probation the court shall specify at the time of sentencing the length of any term during which the defendant is to be supervised, which term may not exceed the maximum term for which the defendant could be confined, and the authority that shall conduct the supervision.
>
> **(b) Conditions generally.--**The court shall attach such of the reasonable conditions authorized by subsection (c) of this section as it deems necessary to insure or assist the defendant in leading a law-abiding life.
>
> **(c) Specific conditions.--**The court may as a condition of its order require the defendant:
>
> . . . .
>
> (13) To satisfy any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience.

- 9 -

42 Pa.C.S. § 9754. At issue in **Elliot** was whether a condition imposed by the Pennsylvania Board of Probation and Parole was valid, insofar as the Board, rather than the sentencing judge, imposed the condition. Our Supreme Court analyzed the Sentencing Code *in pari materia* with the Prisons and Parole Code and concluded: "In summary, a trial court may impose conditions of probation in a generalized manner, and the Board or its agents may impose more specific conditions of supervision pertaining to that probation, so long as those supervision conditions are in furtherance of the trial court's conditions of probation." **Id**. at 1292. While **Elliot** discussed a condition imposed by the Pennsylvania Board of Probation and Parole, not a county probation office as is the case herein, the case specifically noted that the issue was a "general inquiry concerning whether the Board, **county probation offices**, or the agents and officers thereof, can impose conditions upon probationers that are not explicitly delineated in a trial court's sentencing and probation order." **Id**. at 1289 (emphasis added). Therefore, the probation office was authorized to impose any other conditions reasonably related to Appellant's rehabilitation.

As a subsidiary component of this claim, Appellant argues that even if the no-contact requirement was validly imposed, it was not reasonably related to his rehabilitation as Ms. Witherspoon had no connection to the underlying sexual assault crimes. However, we once again find that this

issue is waived, as Appellant conceded that the condition could be imposed and challenged only its lack of specific boundaries.

Appellant's second claim is that the condition violated due process because it was impermissibly vague. Appellant's argument relies upon *Knight v. Commonwealth, Pennsylvania Board of Probation and Parole*, 510 A.2d 402, 403 (Pa.Cmwlth. 1986), *overruled on other grounds by* *Johnson v. Commonwealth, Pennsylvania Board of Probation and Parole*, 527 A.2d 1107 (Pa.Cmwlth. 1987).[4] In *Knight*, the Commonwealth Court determined that a probationer's condition requiring him to stay away from a mall during "late" evening hours was impermissibly vague and violated constitutional due process.

Our research reveals that only one other case in this Commonwealth has directly addressed a void-for-vagueness challenge in the context of probationary conditions. "Supervisory release conditions are subject to the constitutional doctrines of vagueness and overbreadth." *Commonwealth v. Perreault*, 930 A.2d 553, 559 (Pa.Super. 2007) (citing *United States v. Loy*, 237 F.3d 251, 259–260 (3rd Cir. 2001)). *Perreault* involved a

---

[4] "While the Superior Court is bound to give due consideration to the decisions and reasoning of the Commonwealth Court, this Court is not bound to follow such decisions as controlling." *Nationwide Mutual Insurance Company v. Yungwirth*, 940 A.2d 523, 528, n.5 (Pa.Super. 2008) (citation omitted).

probation condition that prohibited Perreault from possessing "obscene materials or materials which depict or describe sexual conduct[.]" *Id*. at 558. The trial court determined that he had violated his probation by possessing a pornographic film. On appeal, he challenged the condition on vagueness and overbreadth grounds. We concluded that the condition was neither vague nor overbroad, as Perreault mischaracterized its limitations: "The terms of [the condition], therefore, being both specific and well-recognized in the context of law enforcement against sex offenses give probationers of ordinary intelligence clear guidance as to what sex-related content is prohibited, and do not encourage arbitrary enforcement." *Id*. at 560.

We conclude that Appellant is not entitled to relief. While we agree that the condition was hardly the model of clarity, the trial court's revocation was not based purely on a technical violation of the condition.[5] Our review of the record demonstrates that the trial court focused on the **conduct** as it bore on Appellant's rehabilitative prospects, and not the technicalities of the violation. Unlike *Perreault*, which dealt with a restriction on access to

_____

[5] In the context of penal statutes, the void-for-vagueness doctrine requires that a statute "creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties[.]" *Commonwealth v. Mayfield*, 832 A.2d 418, 422 (Pa. 2003) (quoting *Commonwealth v. Heinbaugh*, 354 A.2d 244, 246 (Pa. 1976)).

material that was otherwise legal, the underlying conduct herein is not constitutionally protected; stalking and harassment are punishable when committed by probationers and ordinary citizens alike. To take Appellant's argument to its logical endpoint, the court would have to completely ignore his behavior if he had fully complied with a clearly delineated prohibition. In other words, if the probation office had instructed him to stay 200 yards from Ms. Witherspoon's residence, Appellant assumes that the court could not consider Ms. Witherspoon's testimony if he had continuously monitored her home from a distance of 201 yards.

We find that the court could factor Appellant's behavior into its probation revocation calculus. *Commonwealth v. Hoover*, 909 A.2d 321 (Pa.Super. 2006), is illustrative in this regard. Therein, Hoover was granted work release from a sentence of incarceration imposed for two DUI convictions. *Id*. at 322. One day, Hoover returned from work release while intoxicated, which violated the work release policy. The judge "concluded that [Hoover] was likely to commit new crimes while on probation" due to that violation, and revoked probation. *Id*. We determined that the trial court was permitted to consider intoxication as inconsistent with rehabilitation even though his intoxication was not a crime.

> Although Appellant herein did not, strictly speaking, violate the law by becoming intoxicated, he clearly violated the terms of his work release and demonstrated to the court that he is unworthy of probation and that the granting of the same would not be in subservience to the ends of justice [or] the best interests of the

public. The record reflects that the trial judge was cognizant of Appellant's extensive history of alcohol abuse, numerous prior DUI convictions, and apparent inability to control his addiction to alcohol. The court concluded that, in light of Appellant's behavior, Appellant would be difficult to supervise while on probation and posed a risk to the community in that he was likely to commit new crimes.

*Id*. at 324 (citations and quotation marks omitted).

The same logic applies herein. Strictly speaking, Appellant did not violate the law as he was not charged with any type of stalking or harassment offense. However, the probation office's directive was not the product of an arbitrary or capricious act. **C.f. Elliot**, **supra** at ("[T]he Board and its agents cannot impose any condition of supervision it wishes, *carte blanche.*"). Appellant admitted that Ms. Witherspoon would see his behavior as stalking, and she testified in court that she told him to stay away from her residence. The court could properly consider Appellant's persistent behavior in assessing whether Appellant posed a risk to the community and was a good candidate for continued probation. Thus, no relief is due.

We now reach Appellant's third claim. Appellant contends that the fact he was discharged from counseling was itself based upon his violation of the no-contact order. Since the condition was invalid, the argument goes, so too was his discharge from counseling.

The resolution of this claim is dictated by our foregoing analysis. Appellant does not explain why the purported illegality of the no=contact order further required the counselor, and, by extension, the trial court, to

ignore the evidence generated by the ankle monitor. Appellant is implicitly applying exclusionary rule principles to the evidence gleaned from the ankle monitor without developing that argument. Even if we agreed that the condition was unlawfully imposed, it does not follow that the evidence gathered from the software must be shielded from the fact-finder. **Compare Commonwealth v. Arter**, 151 A.3d 149 (Pa. 2016) (exclusionary rule applied in probation revocation proceedings to evidence gathered by police officers that was suppressed in a criminal trial).

Therefore, we hold that the court did not abuse its discretion in considering all of the evidence presented, which included: Appellant's prior probation violation which was resolved informally, Appellant's criminal history, which included rape, and Appellant's behavior towards Ms. Witherspoon in determining that he posed a risk to the community. **Hoover**, **supra**. Furthermore, the fact Appellant was discharged from counseling due to his inability to admit to committing the crimes during counseling was a proper consideration. **Commonwealth v. A.R.**, 990 A.2d 1 (Pa.Super. 2010) (violation of probation established by, *inter alia*, appellant's "inability to admit in treatment the sexual gratification motive underlying his convictions").

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/20/2017