**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Joseph CASTRO, Appellant.**

Superior Court of Pennsylvania.

Submitted April 26, 2004.

Filed Aug. 6, 2004.

---

John P. Cotter, Philadelphia, for appellant.

Hugh J. Burns, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before: MUSMANNO,
MONTEMURO * and BECK, JJ.

BECK, J.

¶ 1 Appellant brings this direct appeal from the judgment of sentence entered upon revocation of probation. He claims that principles of collateral estoppel bar the court's revocation order. We disagree and so affirm.

¶ 2 On August 20, 2001, appellant entered an open guilty plea to charges of aggravated assault and possessing an instrument of crime (PIC). The trial court imposed an aggregate sentence of seven to fifteen months in prison followed by three years probation. Appellant was granted immediate parole to house arrest and did not file a direct appeal.

¶ 3 On November 7, 2001, while appellant was on house arrest, he was charged with possession with intent to deliver a controlled substance (alprazolam) in violation of 35 P.S. § 780–113. Following his arrest, but prior to trial on these new drug charges, appellant filed a motion to suppress the drugs and he was successful. As a result, the new charges were dismissed. Thereafter, the trial court commenced a violation of parole/probation (VOP) hearing, based on appellant's participation in the drug sale. Appellant was found in violation of his parole/probation and sentenced to two and one-half to five years imprisonment on the aggravated assault charge and a concurrent sentence of one to three years followed by one year probation

* Retired Justice assigned to the Superior Court.

on the PIC charge. The VOP court denied his motion to reconsider sentence and again he took no appeal.

¶ 4 Appellant filed a timely petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541–9546, and received permission to file the instant direct appeal *nunc pro tunc.* He now claims that the VOP court erred in concluding that he violated his probation because the court relied on evidence that previously had been suppressed in a separate criminal proceeding. According to appellant, principles of collateral estoppel and the prohibition against double jeopardy prevented the VOP court from considering such evidence and precluded it from finding him in violation of his parole/probation.[1]

¶ 5 "[I]t is well settled that a probation violation hearing may be conducted prior to a trial for the criminal charges based on the same activities." *Commonwealth v. Brown,* 503 Pa. 514, 469 A.2d 1371, 1375 (1983). The burden of proof for establishing a violation of probation is a preponderance of the evidence, lesser than the burden in a criminal trial of proof beyond a reasonable doubt. But there are other noteworthy differences between a probation revocation hearing and a criminal trial, and the manner in which each proceeding affects the other also is significant:

> The focus [of] a probation hearing, even though prompted by a subsequent arrest, is whether the conduct of the probationer indicates that the probation has proven to be an effective vehicle to accomplish rehabilitation and a sufficient deterrent against future anti-social conduct. It must be emphasized that a probation revocation hearing is not a trial: "The court's purpose is not to determine whether the probationer committed a crime.... It follows that probation revocation hearings are flexible, and material not admissible at trial may be considered by the court.["] "The degree of proof necessary for probation revocation is less than that required to sustain a criminal conviction." "Probation may be revoked on the basis of conduct which falls short of criminal conduct."

*Commonwealth v. Spinozzi,* 236 Pa.Super. 32, 345 A.2d 181, 182–83 (1975) (citations omitted).

¶ 6 Appellant relies on two state Supreme Court cases in support of his claim that he is entitled to relief. In the first, *Commonwealth v. Royster,* 524 Pa. 333, 572 A.2d 683 (1990), the appellant/probationer came before the VOP court after his conviction on new charges. The Commonwealth, in its effort to establish the probation violation, offered only a recitation by the assistant district attorney that appellant had been convicted of new charges for criminal conduct that occurred during the probationary period. No independent evidence of the new crime was offered into evidence; the conviction was the only evidence of record. On the basis of the prosecutor's recitation alone, Royster was deemed to be in violation.

¶ 7 Several months later, however, Royster was granted post-trial relief on the new criminal charges and those charges were dismissed. Royster then filed a timely PCRA petition seeking relief from his VOP sentence and asserting that the grant of post-trial relief on the new criminal charges, coupled with the ultimate dismissal of those charges, meant that the

---

1. Appellant was found in violation of his parole, which he was serving at the time of his arrest, and in anticipatory violation of his probation, which had not yet begun to run. Such a finding is proper in light of the timing of events. *Commonwealth v. Ware,* 737 A.2d 251 (Pa.Super.), *appeal denied,* 561 Pa. 657, 747 A.2d 900 (1999).

VOP order and sentence could not be sustained.

¶ 8 Our Supreme Court agreed. It found that the case turned on the Commonwealth's decision to rely wholly on the new criminal conviction (which was later overturned) as the basis for revocation. The *Royster* court held that the post-trial dismissal of the new criminal charges left no evidence of record to support revocation, which was fatal to the Commonwealth's VOP case:

> Contrary to the Superior Court's characterization, Assistant District Attorney McGill's recitation of the facts underlying Appellant's [new] convictions is not evidence since it is well settled that he [the prosecutor] cannot, as the Commonwealth's advocate at the proceedings, present his own testimony as to the facts. By electing not to present any direct evidence as to Appellant's specific criminal acts, the Commonwealth took a calculated risk that his conviction would be overturned in the post-trial motions. We find, therefore, that the sole basis the Commonwealth offered for Appellant's violation of probation was the fact that he had been convicted ... of new charges. Because the trial court [ultimately] arrested judgment on the conviction, the Commonwealth cannot be found to have established by a preponderance of the evidence that Appellant committed the offense. Revocation of probation and re-sentencing Appellant to a term of imprisonment was [sic] therefore improper.

*Id.* at 339–40, 572 A.2d at 686.

¶ 9 The facts of this case differ from *Royster* in a significant way. Here, the Commonwealth did not base its request for revocation on the fact that appellant had been arrested on new criminal charges. Instead, the Commonwealth offered specific evidence of the offending conduct by presenting the arresting officer as a primary witness at the VOP hearing. The officer testified to observing appellant, who was seated on the porch of his home, remove small items from a bottle and give them to a man on the street in exchange for money. The officer described how he approached appellant after the exchange, how appellant attempted to flee and how the contraband, a bottle of alprazolam, and over $2,000.00 in cash were seized. Further, appellant stipulated to the fact that police drug tests on the pills recovered from him and from the man on the street tested positive for alprazolam. Finally, appellant's probation officer and his house arrest supervisor confirmed that he began his house arrest sentence for the assault charges on October 18, 2001 and he was arrested for selling alprazolam about three weeks later on November 7, 2001.

¶ 10 Unlike in the case of *Royster*, here the Commonwealth offered eyewitness testimony to establish appellant's participation in a drug transaction. The Commonwealth did not simply assert that appellant had been arrested. Instead, it proffered extensive evidence regarding appellant's conduct to establish a violation of probation. As a result, *Royster* is inapplicable.

¶ 11 Appellant next relies on *Commonwealth v. Brown*, 503 Pa. 514, 469 A.2d 1371 (1983), for relief. In *Brown*, the Commonwealth deferred a VOP hearing until after the appellant was brought to trial on his new charges. However, the trial on the new charges resulted in an acquittal and when the Commonwealth later sought revocation based on the conduct that made up the new charges, our Supreme Court held that it was improper.

¶ 12 The basis for the *Brown* court's decision was collateral estoppel, also known as issue preclusion, which "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot

again be litigated between the same parties in any future lawsuit." *Id.* at 518, 469 A.2d at 1373 (citing *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)).[2] The *Brown* court found that because the Commonwealth elected to defer the revocation decision until after the outcome of the trial on the new charges, it was bound by the finding of the criminal trial. The court reasoned that the threshold issue in each case was whether the probationer committed the offense. Because in a prior proceeding the answer to that precise question was no, the Commonwealth was precluded from relitigating the very same issue in the subsequent VOP proceeding.

¶ 13 In this case, there has not been a valid and final judgment on the issue of ultimate fact. No court has ever determined whether the "probationer committed the offense," *i.e.,* whether appellant conducted a drug transaction while on house arrest. The only order entered by the court in this case was the suppression order. But an order of suppression in a criminal case is not a valid and final judgment with respect to the accused's guilt and, more importantly, it does not affect the admissibility of that same evidence in a subsequent VOP hearing.

¶ 14 In *Commonwealth v. Donato,* 353 Pa.Super. 37, 508 A.2d 1256 (1986), a case with a procedural history quite similar to the one here, the appellant claimed that the VOP court should not have commenced revocation proceedings because in the separate criminal proceedings upon which the revocation was based (charges of possession with intent to deliver a controlled substance) the trial judge had granted

suppression and the case had been terminated. But the *Donato* panel held that revocation proceedings were proper as the revocation inquiry allows for consideration of evidence that is not admissible in an adversary criminal trial, including evidence that has been suppressed. *Id.* at 1261. *See also Commonwealth v. Homoki,* 423 Pa.Super. 320, 621 A.2d 136, 139 (1993) (VOP court entitled to consider evidence that has been suppressed in a separate criminal trial), *appeal denied,* 535 Pa. 675, 636 A.2d 634 (1993).

¶ 15 In this case, the VOP court was aware that criminal charges had been brought against appellant for delivery of drugs and, further, that those charges had been dismissed because a motion to suppress the drugs had been granted. Pursuant to *Donato, Homoki* and the cases upon which they are based, the VOP court properly commenced the revocation proceedings and heard evidence tending to establish appellant's participation in illegal activity. The VOP court credited this testimony and found that it proved by a preponderance of the evidence that appellant violated the terms of his probation. Because this evidence was admissible and because it supported the VOP court's ultimate finding of a violation, we find no error in the court's order of revocation and sentence. Neither *Royster* nor *Brown* applies to the facts set out here and so appellant is not entitled to relief based on those cases.

¶ 16 Judgment of sentence affirmed.

---

2. The doctrine of collateral estoppel is part of the Fifth Amendment's guarantee against double jeopardy. *Commonwealth v. Holder,* 569 Pa. 474, 805 A.2d 499 (2002). It is applicable where: (1) the issues in the two actions are sufficiently similar and sufficiently material to justify invoking the doctrine; (2) the issue was actually litigated in the first action; and (3) a final judgment on the specific issue in question was issued in the first action. *Id.* at 480, 805 A.2d at 502.