**[J-67A-2022, J-67B-2022 and J-67C-2022]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 3 WAP 2022 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court entered September |
| | : | 10, 2021 at No. 1271 WDA 2020, |
| v. | : | Vacating the Order of the Court of |
| | : | Common Pleas of Washington |
| | : | County entered August 14, 2020 at |
| KEITH ROSARIO, | : | No. CP-63-CR-000223-2015 and |
| | : | remanding. |
| Appellee | : | |
| | : | ARGUED:  October 26, 2022 |

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 4 WAP 2022 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court entered September |
| | : | 10, 2021 at No. 1272 WDA 2020, |
| v. | : | Vacating the Order of the Court of |
| | : | Common Pleas of Washington |
| | : | County entered August 14, 2020 at |
| KEITH ROSARIO, | : | No. CP-63-CR-001543-2013 and |
| | : | remanding. |
| Appellee | : | |
| | : | ARGUED:  October 26, 2022 |

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 5 WAP 2022 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court entered September |
| | : | 10, 2021 at No. 1273 WDA 2020, |
| v. | : | Vacating the Order of the Court of |
| | : | Common Pleas of Washington |
| | : | County entered August 14, 2020 at |
| KEITH ROSARIO, | : | No. CP-63-CR-001262-2013 and |
| | : | remanding. |
| Appellee | : | |
| | : | ARGUED:  October 26, 2022 |

## OPINION

**JUSTICE DOUGHERTY**                    **DECIDED: MAY 16, 2023**

We granted discretionary review to consider the legality of the practice of anticipatory revocation of probation, which involves the cancellation of a probation sentence before it begins. As detailed below, we hold the plain language of the statute governing probation revocation prohibits this practice. Accordingly, we affirm the order of the Superior Court.

### I.

On May 4, 2015, Rosario pleaded guilty to carrying a firearm without a license, delivering crack cocaine, and delivering marijuana. The trial court sentenced him to two and a half to five years' imprisonment for the gun conviction, a consecutive term of five years' probation for the crack cocaine offense, and one year of probation for the marijuana conviction to run concurrently with the five-year probation. In May of 2017, Rosario was paroled. Four months later, on September 5, 2017, while Rosario was still on parole for his gun conviction but before his probation sentences for his drug crimes began, he kidnapped a man and shot him in the back of the head. In connection with these new crimes, the Commonwealth charged him with attempted homicide and related offenses, and he was held for court.[1] Based on the new charges against him, on May 7, 2018, the trial court revoked Rosario's parole and probations in the present cases. Thereafter, on February 21, 2019, the trial court resentenced him to consecutive terms of the balance of

---

[1] A jury subsequently convicted Rosario of attempted homicide, two counts of aggravated assault, two counts of kidnapping, and criminal conspiracy, on June 3, 2019. Following a remand from the Superior Court for resentencing, on March 25, 2022, he was sentenced to an aggregate term of 25 to 50 years' imprisonment in that separate case.

his two and a half to five-year sentence for carrying a firearm without a license, five to ten years' imprisonment for delivering crack cocaine, and five years' probation for delivering marijuana. On April 16, 2020, however, the Superior Court vacated the judgment of sentence and remanded for resentencing. On remand, on August 14, 2020, the trial court imposed the same consecutive sentences for the gun and crack cocaine convictions but increased the sentence for delivering marijuana to a consecutive term of two to five years' imprisonment.

Rosario appealed to the Superior Court, raising two discretionary sentencing claims. First, he claimed the trial court "did not make any of the required factual findings

pursuant to 42 Pa.C.S. §[§]9721(b)[,[2]] 9725,[[3]] and the records of the violation and

sentencing hearings do not support such findings." Appellant's Superior Court Brief at

_____

[2] Subsections (a) and (b) of section 9721 provide:

**(a) General rule.--**In determining the sentence to be imposed the court shall, except as provided in subsection (a.1), consider and select one or more of the following alternatives, and may impose them consecutively or concurrently:
(1) An order of probation.
(2) A determination of guilt without further penalty.
(3) Partial confinement.
(4) Total confinement.
(5) A fine.
(6), (7) Deleted by 2019, Dec. 18, P.L. 776, No. 115, § 4, imd. effective.

\*   \*   \*

**(b) General standards.--**In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for total confinement that is consistent with section 9725 (relating to total confinement) and the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing and taking effect under section 2155 (relating to publication of guidelines for sentencing, resentencing and parole, risk assessment instrument and recommitment ranges following revocation). In every case in which the court imposes a sentence for a felony or misdemeanor, modifies a sentence, resentences a person following revocation of probation or resentences following remand, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed. In every case where the court imposes a sentence or resentence outside the guidelines adopted by the Pennsylvania Commission on Sentencing under sections 2154 (relating to adoption of guidelines for sentencing), 2154.1 (relating to adoption of guidelines for restrictive conditions), 2154.3 (relating to adoption of guidelines for fines), 2154.4 (relating to adoption of guidelines for resentencing) and 2154.5 (relating to adoption of guidelines for parole) and made effective under section 2155, the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines to the commission, as established under section 2153(a)(14) (relating to powers and duties). Failure to comply shall be grounds for vacating the sentence or resentence and resentencing the defendant.

42 Pa.C.S. §9721(a),(b) (footnote omitted).

[3] Section 9725 provides:

15. Second, he claimed the "sentence was excessive and based upon improper factors." *Id.* at 21. Although Rosario did not also challenge the authority of the trial court to revoke his parole and probations, the panel addressed this issue *sua sponte.*[4] Initially, the panel noted that when a maximum sentence is two years or more, authority to grant or revoke parole is "vested in the Parole Board." *Commonwealth v. Rosario*, 1271-1273 WDA 2020, 2021 WL 4129781 at *4 (Pa. Super. Sept. 10, 2021) (unpublished memorandum), *quoting Commonwealth v. Miller*, 770 A.2d 362, 363 (Pa. Super. 2001). The panel held that "[b]ecause [Rosario's] original maximum sentence [for carrying a firearm without a license] was five years' imprisonment, the Parole Board has exclusive jurisdiction over [his] parole." *Id.* at *5. Accordingly, the panel concluded, the trial court's order revoking his parole and recommitting him to serve the balance of his sentence was a "nullity" and "*sua sponte* vacate[d] th[e] sentence as illegal." *Id.*

---

The court shall impose a sentence of total confinement if, having regard to the nature and circumstances of the crime and the history, character, and condition of the defendant, it is of the opinion that the total confinement of the defendant is necessary because:

(1) there is undue risk that during a period of probation or partial confinement the defendant will commit another crime;

(2) the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; or

(3) a lesser sentence will depreciate the seriousness of the crime of the defendant.

42 Pa.C.S. §9725.

[4] An appellate court can raise and address the legality of a sentence *sua sponte*. *See Commonwealth v. Hill*, 238 A.3d 399, 407 (Pa. 2020) ("[A]n appellate court can address an appellant's challenge to the legality of his sentence even if that issue was not preserved in the trial court; indeed, an appellate court may raise and address such an issue *sua sponte*.").

Turning to the propriety of the probation revocations, the panel observed the Superior Court "has affirmed anticipatory revocations of probation[.]" *Id.*, *citing Commonwealth v. Ware*, 737 A.2d 251, 253 (Pa. Super. 1999), and *Commonwealth v. Wendowski*, 420 A.2d 628, 630 (Pa. Super. 1980). However, the panel noted, the Superior Court sitting *en banc*, "recently overruled *Wendowski*, *Ware*, and other cases affirming anticipatory revocations of probation" in *Commonwealth v. Simmons*, 262 A.3d 512 (Pa. Super. 2021) (*en banc*). The panel recounted that the *Simmons* court explained:

> No statutory authority exists to support [anticipatory probation revocation]. Rather, the plain language of the relevant statutes provides that: a trial court may only revoke an order of probation "upon proof of the violation of specified conditions of the probation;" the "specified conditions" of an order of probation are attached to, or are a part of, the order of probation; and, when the trial court imposes an "order of probation" consecutively to another term, the entirety of the "order of probation" – including the "specified conditions" – do not begin to commence until the prior term ends.

*Id.*, quoting *Simmons*, 262 A.3d at 524-25.

Here, the panel observed, when the trial court revoked Rosario's probationary sentences on May 7, 2018, he was still on parole for the firearm conviction, and had not yet started serving his terms of probation, which ran consecutively to his gun sentence. "Under *Simmons*," the panel held, "the [trial] court lacked the authority to revoke [Rosario's] probationary sentences[.]" *Id.* at *6. Accordingly, the panel *sua sponte* vacated the sentences for the crack cocaine and marijuana convictions, and remanded to the trial court "to reinstate the original May 4, 2015 orders of probation." *Id.* In sum then, the panel vacated all three sentences, and ordered reimposition of the original orders of probation for the drug offenses.

## II.

This Court granted the Commonwealth's petition for allowance of appeal, which raised two questions: "(1) Did the Superior Court err and abuse its discretion and

misapprehend and ignore or misapply the doctrine of *stare decisis* in its *Simmons* decision by overturning over 40 years of case law permitting the revocation of consecutive probation sentences not yet commenced where there has been a substantive violation and conviction in a new case?" and "(2) Did the Superior Court abuse its discretion and misapprehend and misapply the statutory authority it cited in *Simmons*, which statutes do not clearly and unambiguously speak to or demand the result of prohibiting violation of probation sentences that have not yet commenced when a substantive violation has occurred?" *Commonwealth v. Rosario*, 271 A.3d 1285 (Pa. 2022) (*per curiam*). The issue of whether the anticipatory revocation of probation is permitted under Pennsylvania law is a question of law. Accordingly, our standard of review is *de novo* and our scope of review is plenary. *See, e.g.*, *Pennsylvania Environmental Defense Foundation v. Commonwealth*, 279 A.3d 1194, 1202 (Pa. 2022).

The Commonwealth argues the panel should be reversed, and trial courts should be allowed to revoke probation sentences before they begin. It contends the *en banc* Superior Court panel in *Simmons* erred in overruling the panel decisions in *Wendowski* and its progeny upholding anticipatory probation revocation. It asserts "overruling a prior precedent requires the consultation of a number of factors: the quality of the precedent's reasoning, the workability of the rule it established, its consistency with other related decisions, the reliance on the decision, and the age of the decision." Commonwealth's Brief at 15. Yet, the Commonwealth claims, *Simmons* "undertook no independent analysis" of these factors and instead overruled the extant line of precedent in "conclusory fashion." *Id.* at 16. In the Commonwealth's view, these considerations call for adherence to *Wendowski* and the decisions following it. With respect to the quality of the reasoning of these cases, the Commonwealth maintains "mischief would ensue if criminals could commit crimes with impunity knowing that their probationary sentence was not subject to

being revoked and they were not subject to being resentenced for committing new crimes." *Id.* at 16. The Commonwealth additionally contends the rule established by these precedents is workable given that the General Assembly has repeatedly amended the probation-related statutes of 42 Pa.C.S. §9754,[5] and 42 Pa.C.S. §9771,[6] yet "never

---

[5] Section 9754 provides:

**(a) General rule.--**In imposing an order of probation the court shall specify at the time of sentencing the length of any term during which the defendant is to be supervised, which term may not exceed the maximum term for which the defendant could be confined, and the authority that shall conduct the supervision. The court shall consider probation guidelines adopted by the Pennsylvania Commission on Sentencing under sections 2154 (relating to adoption of guidelines for sentencing) and 2154.1 (relating to adoption of guidelines for restrictive conditions).

**(b) Conditions generally.--**The court shall attach reasonable conditions authorized by section 9763 (relating to conditions of probation) as it deems necessary to ensure or assist the defendant in leading a law-abiding life.

(c) Deleted by 2019, Dec. 18, P.L. 776, No. 115, § 4, imd. effective.

**(d) Sentence following violation of probation.--**The sentence to be imposed in the event of the violation of a condition shall not be fixed prior to a finding on the record that a violation has occurred.

42 Pa.C.S. §9754.

[6] Section 9771 provides:

**(a) General rule.--**The court has inherent power to at any time terminate continued supervision, lessen the conditions upon which an order of probation has been imposed or increase the conditions under which an order of probation has been imposed upon a finding that a person presents an identifiable threat to public safety.

**(b) Revocation.--**The court may increase the conditions, impose a brief sanction under section 9771.1 (relating to court-imposed sanctions for violating probation) or revoke an order of probation upon proof of the violation of specified conditions of the probation. Upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation. The attorney for the Commonwealth may file notice at any time prior to resentencing of the Commonwealth's intention to proceed under an applicable provision of law requiring a mandatory minimum sentence.

made a change in the language that would negate or express any disagreement with, let alone call into question, *Wendowski* or its progeny." *Id.* at 17. The Commonwealth posits *Wendowski* is consistent with this Court's decisions in *Commonwealth v. Foster*, 214 A.3d 1240 (Pa. 2019), and *Commonwealth v. Vivian,* 231 A.2d 301 (Pa. 1967). It also argues appellate courts, trial courts, and parties have long relied on this decision. It emphasizes "the Superior Court's line of precedent runs from *Wendowski* in 1980 up until *Simmons* in August 2021[,]" a period of over forty years. *Id.* at 18. In addition to faulting *Simmons* for "conduct[ing] no *stare decisis* analysis[,]" the Commonwealth warns that under this decision, "a parolee like Rosario could commit innumerable new crimes (and be convicted for them) while on the parole portion of a sentence and face no more punishment than revocation of his parole." *Id.* at 19-20.

The Commonwealth also argues *Simmons* "misapplied" 42 Pa.C.S. §9721, as well as sections 9754 and 9771. *Id.* at 21. It notes there is no language in sections 9721 or 9754 restricting resentencing, and section 9771 does not "plainly and explicitly prohibit the revocation of consecutive probation sentences." *Id.* at 24. A sentence of probation, the Commonwealth advocates, is conditional by its very nature, and the general condition

---

**(c) Limitation on sentence of total confinement.--**The court shall not impose a sentence of total confinement upon revocation unless it finds that:
(1) the defendant has been convicted of another crime; or
(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or
(3) such a sentence is essential to vindicate the authority of the court.

**(d) Hearing required.--**There shall be no revocation or increase of conditions of sentence under this section except after a hearing at which the court shall consider the record of the sentencing proceeding together with evidence of the conduct of the defendant while on probation. Probation may be eliminated or the term decreased without a hearing.

42 Pa.C.S. §9771.

that the defendant refrain from committing new crimes attaches at the time the sentence is imposed. It insists section 9771 "reads no differently[,]" and concluding otherwise "incorrectly place[s] language into that clear and unambiguous statute." *Id.* at 27. Furthermore, it contends the occasion and necessity for these statutes was "the punishment and rehabilitation of offenders, which is undermined by the *Simmons* court's opinion . . . essentially giving a free pass to those who reoffend and are convicted of new offenses[.]" *Id.* at 29.

*Amicus curiae* the Pennsylvania District Attorneys Association (PDAA) joins the Commonwealth in arguing for reversal. The PDAA submits the panel erred in relying on *Simmons* because *Simmons* misapplied the rules of statutory construction. *Amicus* asserts the requirement that a defendant must be currently serving probation in order to have his probation revoked "effectively add[s]" language to section 9771, and "is directly contradictory to the accepted interpretation and practice created in 1980 in . . . *Wendowski*, to which our legislature acquiesced." *Amicus* Brief at 13. Moreover, the PDAA criticizes *Simmons* for "fail[ing] to properly acknowledge and apply the doctrine of *stare decisis.*" *Id.* at 14. It claims the *en banc* panel in *Simmons* simply disagreed with *Wendowski* and its progeny, which was "insufficient to overcome the doctrine of *stare decisis* and 40 years of precedent." *Id.* at 18. The PDAA insists *Simmons* will permit defendants to "violate the law with impunity" until their probationary terms begin. *Id.* In addition, *amicus* argues "*Simmons* significantly limits the sentencing options available to lower courts" because "[w]ithout the ability to violate a consecutive probation sentence, . . . if a court believes that a state sentence[7] might be warranted, the[ ] only option available is to impose a state sentence and afford no opportunity for defendants to demonstrate that they can be compliant with a lesser level of supervision." *Id.* at 19.

---

[7] Generally, terms of incarceration of two years or more are served in state prison. *See* 42 Pa.C.S. §9762(b).

Lastly, the PDAA asserts a "multitude" of sentences "were constructed with the *Wendowski* decision as the guiding principle." *Id.*

In response, Rosario argues for affirmance of the panel's decision applying *Simmons*. He asserts the *Simmons* court was not bound by *stare decisis* because it was sitting *en banc*, whereas *Wendowski* and its follow-on precedents were decisions by three-judge panels. He notes it is well settled that the Superior Court, sitting *en banc*, may overrule a decision of a three-judge panel of that court. Moreover, Rosario contends, since this Court's standard of review in assessing the legality of the anticipatory revocation of probation is *de novo*, "any assessment concerning the propriety of the intermediate court's failure to follow its own precedent on that issue is immaterial." Appellee's Brief at 11, *quoting McGrath v. Bureau of Professional and Occupational Affairs*, 173 A.3d 656, 661 n.7 (Pa. 2017). He rejects the policy assertion of the Commonwealth and PDAA that disallowing anticipatory revocation will "open the gates to anti-social conduct that can be committed with impunity, with criminals knowing nothing will happen to them." *Id.* at 13. On the contrary, Rosario contends, a defendant who commits a new crime while on parole is subject not only to revocation of his parole and recommitment to serve his backtime, but also a separate sentence for his new offense if he is convicted.

Furthermore, Rosario maintains the "plain and unambiguous language" of section 9721 and "related statutes" make "clear that a defendant can be revoked for violating conduct only while he is on probation, and not before he is serving the consecutively imposed term." *Id.* at 16. He notes section 9721(a) provides that an order of probation may be imposed consecutively or concurrently, not both. However, he argues, "[i]f a judge considers conduct in violation of parole to also be a violation of probation of a consecutively imposed term of probation that has not yet begun, and revokes that

probation, in effect the consecutively imposed term of probation has been impermissibly modified to be a concurrent term of probation under Section 9721(a)." *Id.* at 18. Rosario claims as well that anticipatory revocation "effectively lengthens the term of probation beyond the stated consecutive term," and thus violates the mandate of section 9754(a) that probation shall be ordered for a fixed period of time. *Id.* at 19. He emphasizes revocation is "conspicuously absent" from the actions a court may take at any time with respect to probation identified in section 9771(a). *Id.* at 22. He asserts section 9771(d) specifies there shall be no probation revocation except after a hearing considering the defendant's conduct while on probation, and the word "'while' . . . normally means 'during the time[.]'" *Id.* at 23, *quoting In re Naugle's Estate*, 112 A. 24, 25 (Pa. 1920). Because the plain language of the statutes does not permit anticipatory revocation, Rosario advances, the doctrine of legislative acquiescence cannot support this procedure, especially considering that penal statutes must be strictly construed.

**III.**

In this and most cases, section 9771 of the Sentencing Code, 42 Pa.C.S. §9771, governs the revocation of probation. *See Foster*, 214 A.3d at 1246-47 ("[S]ection 9771 . . . governs revocation of probation[.]").[8] Our construction of section 9771, as with any statute, is guided by the Statutory Construction Act. *See* 1 Pa.C.S. §§1501-1991. Under the Act, "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. §1921(a). "The plain language of a statute generally provides the best indication of legislative intent." *Commonwealth v. Lehman*, 243 A.3d 7, 16 (Pa. 2020). "When the words of a statute are

---

[8] Under 42 Pa.C.S. §9771.1, "the court of common pleas of a judicial district may establish a program to impose swift, predictable and brief sanctions on persons who violate their probation." 42 Pa.C.S §9771.1(a). Following a third violation of probation under such a program, a court may revoke the order of probation. *See* 42 Pa.C.S. §9771.1(i)(1). Section 9771.1 is not implicated here.

clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. §1921(b). In ascertaining the plain meaning, "we consider the statutory language at issue not in isolation, but in the context in which it appears." *Commonwealth by Shapiro v. Golden Gate National Senior Care LLC*, 194 A.3d 1010, 1027 (Pa. 2018). In addition, words and phrases are construed according to rules of grammar and according to their common and approved usage, except for technical words and phrases and those that have acquired a peculiar and appropriate meaning or are specifically defined. *See* 1 Pa.C.S. §1903(a). "Only when the words of a statute are not explicit will we resort to other considerations to discern legislative intent." *Commonwealth v. Janssen Pharmaceutica, Inc.*, 8 A.3d 267, 275 (Pa. 2010); *see also Commonwealth v. Cousins*, 212 A.3d 34, 39 (Pa. 2019) ("We will only look beyond the plain meaning of the statute where the words of the statute are unclear or ambiguous."), *quoting Commonwealth v. Ramos*, 83 A.3d 86, 91 (Pa. 2013).

The plain language of section 9771, which is set forth *supra* in footnote 6, reflects the legislative intent to permit the revocation of probation only after the relevant probationary term has begun.[9] Subsection (a) lists but three actions concerning probation a court may take "at any time": terminate continued supervision, lessen the conditions of probation, and increase the conditions of probation upon a finding of an identifiable threat to public safety. 42 Pa.C.S. §9771(a). Tellingly, subsection (a) does not include the revocation of probation as something the court may do "at any time." The implication of this omission is that revocation cannot be ordered at any time but rather is subject to temporal limitations, *i.e.*, revocation is permissible solely during the term of the probation

---

[9] The General Assembly amended section 9771 in 2019, following the revocation of Rosario's probations in 2018. The language of section 9771 foreclosing anticipatory probation revocation appears in both the pre- and post-amendment versions of the statute.

itself. *See Thompson v. Thompson*, 223 A.3d 1272, 1277 (Pa. 2020) ("Under the doctrine of *expressio unius est exclusio alterius*, the inclusion of a specific matter in a statute implies the exclusion of other matters.") (internal quotation and citation omitted).[10]

Moreover, subsection (b) states the court may "revoke an order of probation upon proof of the violation of specified conditions of **the probation**." 42 Pa.C.S. §9771(b) (emphasis added). That is, only a violation of the probation itself may trigger revocation, not a violation of the probation order before the probation term has started. Had the legislature intended a violation of the conditions of the order of probation to be sufficient for revocation, it would have said so, and the pertinent language of subsection (b) would instead permit revocation upon proof of the violation of specified conditions of the **order of** probation. *See Commonwealth v. Wright*, 14 A.3d 798, 814 (Pa. 2011) ("[A]s a matter of statutory interpretation, although one is admonished to listen attentively to what a

---

[10] The dissent argues "the reason revocation cannot occur 'at any time' is not a temporal limitation, but the hearing requirement." Dissenting Opinion at 8. On the contrary, as with revocation, a hearing is required before the court can increase the conditions of probation. *See* 42 Pa.C.S. §9771(d) ("There shall be no revocation **or increase of conditions of sentence** under this section except after a hearing at which the court shall consider the record of the sentencing proceeding together with evidence of the conduct of the defendant while on probation.") (emphasis added). Section 9771(d), by its broad terms, applies to all increases in the conditions of probation without limitation, including increases premised on an identifiable threat to public safety. Yet section 9771(a) explicitly permits such increases based on a safety threat to occur at any time. *See* 42 Pa.C.S. §9771(a) ("The court has inherent power to **at any time** terminate continued supervision, lessen the conditions upon which an order of probation has been imposed **or increase the conditions under which an order of probation has been imposed upon a finding that a person presents an identifiable threat to public safety.**") (emphasis added). Thus, inclusion in section 9771(d)'s hearing requirement does not dictate exclusion from section 9771(a). The reason revocation was omitted from section 9771(a)'s list of procedures that can occur at any time was not because of the hearing requirement in section 9771(d), but because it was the legislature's intent to permit revocation only during the probationary term and not before it begins.

statute says[;][o]ne must also listen attentively to what it does not say."), *quoting Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.,* 788 A.2d 955, 962 (Pa. 2001).[11]

Also, subsection (b) requires the court resentencing a defendant following revocation of probation to give "due consideration . . . to the time spent **serving** the order of probation." 42 Pa.C.S. §9771(b) (emphasis added). Yet, if the probationary term has not even commenced, then no time at all has been spent serving the probation sentence. A probation sentence does not commence from the date of imposition if the sentencing court has expressly ordered otherwise. *See* Pa.R.Crim.P. 705. The requirement to consider in resentencing the time spent serving the probation sentence is incompatible with anticipatory probation revocation.[12]

---

[11] The dissent asserts "the legislature could have just as easily had the revocation statute require proof of the violation of specified conditions **while on** probation." Dissenting Opinion at 6 n.5 (emphasis in original). However, adding this language would have been redundant. The legislature's pointed use of the phrase "the probation" instead of the phrase "order of probation" employed earlier in the same sentence indicates it did not mean for these phrases to have identical meanings. Had the legislature intended a violation of the order of probation to suffice for revocation, it would have simply repeated this phrase. Instead, the legislature used a different phrase – "the probation" – indicating its intent to require a violation of the actual probation sentence rather than the mere order of probation. *See Commonwealth v. Elliott*, 50 A.3d 1284, 1290 (Pa. 2012) ("[W]hen the legislature uses . . . different words, we must . . . presume that 'it must have meant for the words to have separate meanings.'"), *quoting Drabic v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 906 A.2d 1153, 1157 (Pa. 2006); *see also Probation,* BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "probation" as "[a] court-imposed criminal sentence that, subject to stated conditions, releases a convicted person into the community instead of sending the criminal to jail or prison, usu. on condition of routinely checking in with a probation officer over a specified period of time" and "[t]he period of time during which a sentence of probation is in effect").

[12] The dissent proposes that "when a defendant violates the terms of probation prior to the start of the probationary period, the court simply must consider the fact that the defendant spent no time serving the order of probation when deciding the appropriate revocation sentence." Dissenting Opinion at 8 n.7. But the plain language of section 9771(b) does not contemplate a circumstance where the defendant has spent no time at all serving his probation sentence. This provision does not call for consideration of **any** time spent serving probation. Nor does it require the court to consider the time spent

Furthermore, subsection (d) provides: "[t]here shall be no revocation" of probation "except after a hearing at which the court **shall** consider . . . evidence of the conduct of the defendant **while** on probation." 42 Pa.C.S. §9771(d) (emphasis added). The word "shall" commonly connotes a mandatory requirement. *See Chanceford Aviation Properties, L.L.P. v. Chanceford Tp. Bd. of Supervisors*, 923 A.2d 1099, 1104 (Pa. 2007) ("The word 'shall' by definition is mandatory, and it is generally applied as such."). In addition, when used as a conjunction as it is here, "while" generally means "during the time." *See Naugle's Estate*, 112 A. at 25 ("The word 'while,' as shown by the dictionaries, normally means 'during the time[.]'"). Thus, under the express terms of subsection (d), the court cannot revoke probation unless the court has considered the defendant's conduct during the time he was serving probation. An assessment of the defendant's conduct while on probation, however, is possible only if the probationary term has in fact actually begun. If the probation has not commenced, then perforce there is no conduct of the defendant while on probation for the court to consider. In other words, in the anticipatory revocation context, the statutory mandate to consider the defendant's conduct on probation is impossible to satisfy. In this way, subsection (d) limits the revocation of probation to the cancellation of probationary terms currently being served, and forecloses the anticipatory revocation of probation sentences yet to begin.[13] The

serving the probationary sentence, **if any**. Rather, subsection (b) obliges the court to consider **the** time spent on probation. It presumes a situation where the defendant has actually spent time serving the probationary term, and does not envisage anticipatory revocation where there is no such time.

[13] The dissent maintains section 9771(d) "does not prevent the court from considering the conduct of the defendant prior to the term of probation." Dissenting Opinion at 8. That may be, but whatever discretion the court has to consider pre-term-of-probation conduct would not eliminate the requirement to consider the defendant's conduct during the term of probation itself. This statutory obligation cannot be fulfilled in the anticipatory revocation context. The dissent also alleges "subsection (d) does not foreclose revocation prior to the start of the probationary term, there is simply no 'conduct of the

plain text of section 9771 clearly (and repeatedly) prohibits the anticipatory revocation of probation.

Although we conclude the clear language of section 9771 explicitly forbids anticipatory probation revocation, any hypothetical ambiguity in this regard is clarified by consideration of statutes *in pari materia* and the rule of lenity. "Statutes or parts of statutes are *in pari materia* when they relate to the same persons or things or to the same class of persons or things." 1 Pa.C.S. §1932(a). "Statutes *in pari materia* shall be construed together, if possible, as one statute." 1 Pa.C.S. §1932(b). "It must not be overlooked that the rule requiring statutes *in pari materia* to be construed together is only a rule of construction to be applied as an aid in determining the meaning of a doubtful statute, and that it cannot be invoked where the language of a statute is clear and unambiguous." *In re McFarland's Estate*, 105 A.2d 92, 95-96 (Pa. 1954); *see also Goodwin v. Goodwin*, 280 A.3d 937, 948 n.7 (Pa. 2022) ("[T]he rule requiring *in pari materia* construction of statutes applies in instances of ambiguous statutory language."). Like section 9771, other statutes relating to probation also include language inconsistent with the anticipatory revocation of probation.

To wit, section 9721(a) authorizes the court to impose a sentence of probation "consecutively **or** concurrently[.]" 42 Pa.C.S. §9721(a) (emphasis added). The word "or" is disjunctive and "means one or the other of two or more alternatives." *In re Paulmier*, 937 A.2d 364, 373 (Pa. 2007). Accordingly, section 9721(a) permits a probation sentence

---

defendant while on probation' for the court to consider at that time." *Id.* at 8, *quoting* 42 Pa.C.S. §9771(d). This ignores the mandatory nature of section 9771(d). This provision does not say the revocation court **may** consider the defendant's conduct while on probation, or that it is **permissible** for the court to do so. Again, the statute states in no uncertain terms that "the court **shall** consider the . . . evidence of the conduct of the defendant while on probation." 42 Pa.C.S. §9771(d) (emphasis added). Section 9771(d) sets forth a compulsory obligation to consider the defendant's conduct on probation. The revocation court has no discretion to opt out of this obligatory consideration, either because probation has not yet started or for any other reason.

that is **either** consecutive **or** concurrent to one or more other sentences, not consecutive **and** concurrent. Yet when, as here, the court anticipatorily revokes a consecutive probationary term for a violation of a separate sentence the defendant is currently serving, the probation sentence is effectively both concurrent **and** consecutive, in contravention of the plain language of section 9721(a).

Moreover, section 9754(a) mandates: "[i]n imposing an order of probation the court shall specify at the time of sentencing the length of any term during which the defendant is to be supervised[.]" 42 Pa.C.S. §9754(a). This language requires the imposition of probation for a fixed period of time. Revoking probation before it starts effectively lengthens the term of probation beyond the fixed term specified at sentencing. Similarly, the court is statutorily required to "specify at the time of sentencing . . . the length of the term of restrictive conditions" of probation. 42 Pa.C.S. §9763(a).[14] Thus, like section 9754, section 9763 envisions a definite probation sentencing scheme. In tension with these statutes, anticipatory revocation provides for an indefinite regime whereby the probationary term is not necessarily confined to a fixed period of time beginning on a date certain.

Finally, "[u]nder the rule of lenity, when a penal statute is ambiguous, it must be strictly construed in favor of the defendant." *Cousins*, 212 A.3d at 39; *see also* 1 Pa.C.S.

---

[14] The full text of subsection 9763(a) provides:

**(a) General rule.--**In imposing probation, the court shall consider guidelines adopted by the Pennsylvania Commission on Sentencing under section 2154 (relating to adoption of guidelines for sentencing) or 2154.1 (relating to adoption of guidelines for restrictive conditions) and specify at the time of sentencing the conditions of probation, including the length of the term of restrictive conditions under subsection (c) or (d). The term of restrictive conditions under subsection (c) shall be equal to or greater than the mandatory minimum term of imprisonment required by statute.

42 Pa.C.S. §9763(a).

§1928(b)(1). "[T]he rule of lenity has its limits, as it 'does not require that the words of a penal statute be given their narrowest possible meaning or that legislative intent be disregarded.'" *Commonwealth v. Nevels*, 235 A.3d 1101, 1105 (Pa. 2020), *quoting Commonwealth v. Packer*, 798 A.2d 192, 196 (Pa. 2002). Moreover, "the rule applies if at the end of the process of construing what [the legislature] has expressed, there is a grievous ambiguity or uncertainty in the statute[.]" *Shaw v. United States*, 580 U.S. 63, 71 (2016) (internal quotations and citations omitted). Undoubtedly, section 9771 is a penal statute. *See Nesbit v. Clark*, 116 A. 404, 406 (Pa. 1922) ("A penal statute is one which imposes a penalty or forfeiture for transgressing its provisions, or for doing a thing prohibited[.]"). Hence, to the extent section 9771 remains, after exhausting all other tools of statutory interpretation, hopelessly ambiguous as to whether it authorizes the anticipatory revocation of a probation, the rule of lenity calls for the conclusion it does not. Pursuant to the plain meaning of section 9771, as confirmed by the *in pari materia* doctrine and rule of lenity, defendants may not be preemptively penalized for violating probation sentences they have not yet even begun to serve.

The arguments of the dissent, Commonwealth, and *amicus* do not persuade us otherwise. The dissent's reliance on *Commonwealth v. Nicely*, 638 A.2d 213 (Pa. 1994) is misplaced. In *Nicely*, the appellees were ordered to pay additional supervision fees while they were serving their probation sentences. *See id.* at 215. Thus, *Nicely* involved the modification of conditions of probationary sentences currently being served, which, as the Court there specifically noted, *see id.* at 217, is permitted under 42 Pa.C.S. §9771(a). *Nicely* did not involve, much less endorse, the revocation of probation before it starts.

The dissent's citation to *Commonwealth v. Kates*, 305 A.2d 701 (Pa. 1973) also misses the mark. *Kates* predated the promulgation of section 9771, which was enacted

in 1974 as 18 Pa.C.S. §1371 and renumbered section 9771 in 1980. Moreover, each of the defendants in *Kates* were serving their probation sentences when they were arrested for new offenses. *See Kates*, 305 A.2d at 703-04. Hence, as in *Nicely*, there was no cause for the *Kates* Court to even consider the propriety of anticipatory probation revocation, let alone endorse this procedure.[15]

Contrary to the Commonwealth's assertion, *Vivian* does not support construing section 9771 to permit the anticipatory revocation of probation. Like *Kates*, *Vivian* also predates the enactment of section 9771. In addition, while the facts of *Vivian* involved the anticipatory revocation of probationary sentences, the defendant in that case did not challenge the propriety of revoking probation before it begins. Instead, Vivian claimed the trial court violated double jeopardy by changing his probation sentences to terms of imprisonment. *See Vivian*, 231 A.2d at 305 ("It is now asserted that the prison sentences imposed on February 23, 1966, modifying the court order of probation on February 14, 1966, violated due process and constituted double jeopardy in violation of the provisions of Article 1, s 10 of the Pennsylvania Constitution, P.S., and the Fifth Amendment to the United States Constitution."). The *Vivian* Court held "the trial court in its discretion had the right to change its order of probation and impose a prison sentence without violating the proscription against double jeopardy included in the Fifth Amendment to the United States Constitution[.]" *Id.* at 306 (internal citation omitted). Because it was not at issue in the case, *Vivian* said nothing at all regarding the legality of anticipatory probation revocation. When an issue is "not . . . raised in briefs or argument nor discussed in the opinion of the Court . . . , the case is not a binding precedent on this point." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952).

---

[15] Indeed, the dissent acknowledges "it is obvious" *Nicely* and *Kates* do not "decide today's issue." Dissenting Opinion at 5 n.3.

The Commonwealth's dependence on *Foster* is also unavailing. *Foster* involved the question of "what constitutes a permissible basis for a court to find an individual in violation of probation" under section 9771. *Foster*, 214 A.3d at 1243. That is, *Foster* concerned **what** may justify the revocation of probation, not **when** revocation may be ordered. Ultimately, this Court held "a court may find a defendant in violation of probation only if the defendant has violated one of the 'specific conditions' of probation included in the probation order or has committed a new crime." *Id.* at 1250. Thus, "the question of anticipatory revocation was not before the *Foster* Court[,]" *Simmons*, 262 A.3d at 538 (Bowes, J., concurring and dissenting), and the Court offered no view on this distinct issue.

While acknowledging "the statute at issue" is section 9771, Dissenting Opinion at 2, the dissent nevertheless insists sections 9754(b) and 9763(b) "make clear that the conditions of probation are not limited to the probationary term," *id.* at 6. To the contrary, as noted, *see supra* n. 5, section 9754(b) simply provides: "The court shall attach reasonable conditions authorized by section 9763 (relating to conditions of probation) as it deems necessary to ensure or assist the defendant in leading a law-abiding life." 42 Pa.C.S. §9754(b). Section 9763(b), in turn, states: "The court may attach any of the following conditions upon the defendant as it deems necessary[,]" and then specifies the conditions. 42 Pa.C.S. 9763(b).[16] These statutes concern **what** conditions may be

---

[16] The conditions are:

(1) To meet family responsibilities.
(2) To be devoted to a specific occupation, employment or education initiative.
(3) To participate in a public or nonprofit community service program.
(4) To undergo individual or family counseling.

imposed on probation, *i.e.*, "reasonable conditions" that the trial court "deems necessary," not **when** these conditions apply. They do not mandate, "clear[ly]" or otherwise, that the conditions immediately spring into existence when the court enters an order of probation. Indeed, for many defendants, like Rosario, who are sentenced to a term of imprisonment followed by a consecutive period of probation, it would be impossible to comply straight away upon sentencing with all of the conditions noted in section 9763(b). For instance, it is not possible for an incarcerated defendant to attend or reside in a rehabilitative facility or other intermediate punishment program, or to report to the court or a designated person.[17]

---

(5) To undergo available medical or psychiatric treatment or to enter and remain in a specified institution, when required for that purpose.

(6) To attend educational or vocational training programs.

(7) To attend or reside in a rehabilitative facility or other intermediate punishment program.

(8) Deleted by 2019, Dec. 18, P.L. 776, No. 115, § 4, imd. effective.

(9) To not possess a firearm or other dangerous weapon unless granted written permission.

(10) To make restitution of the fruits of the crime or to make reparations, in an affordable amount and on a schedule that the defendant can afford to pay, for the loss or damage caused by the crime.

(11) To be subject to intensive supervision while remaining within the jurisdiction of the court and to notify the court or designated person of any change in address or employment.

(12) To report as directed to the court or the designated person and to permit the designated person to visit the defendant's home.

(13) To pay a fine.

(14) To participate in drug or alcohol screening and treatment programs, including outpatient programs.

(15) To do other things reasonably related to rehabilitation.

(16), (17) Deleted by 2019, Dec. 18, P.L. 776, No. 115, § 4, imd. effective.

42 Pa.C.S. §9763(b).

[17] The dissent contends the existence of "an impossible condition" of probation "does not make all other possible conditions . . . a nullity until every condition is possible."

The Commonwealth and *amicus* are wrong to suggest the *en banc* panel majority in *Simmons* was bound by *stare decisis*. "[A]n *en banc* panel of an intermediate court is authorized to overrule a three-judge panel decision of the same court." *McGrath*, 173 A.3d at 661 n.7. In any event, "any purported failure on the part of the Superior Court . . . to follow its own precedent is immaterial to our *de novo* resolution of the legal issue presented." *Commonwealth v. Smith*, 186 A.3d 397, 401 n.6 (Pa. 2018); *see also McGrath*, 173 A.3d at 661 n.7 ("[W]here, as here, this Court undertakes *de novo* resolution of a legal issue, any assessment concerning the propriety of the intermediate court's failure to follow its own precedent on that issue is immaterial.").

The Commonwealth's championing of *Wendowski*, and the line of three-judge Superior Court panel decisions following it,[18] is unconvincing. These decisions do not, of course, bind this Court any more than they bound the *en banc* panel in *Simmons*. *See In re Estate of duPont*, 2 A.3d 516, 524 (Pa. 2010) ("[T]his Court is not bound by the Superior Court's holdings[.]"). Nor are they persuasive. *Wendowski* did not even acknowledge what was then section 1371, much less explicate how this statute authorized anticipatory probation revocation. It is axiomatic, and should hardly need reiteration, that proper

---

Dissenting Opinion at 6-7 n.5. We agree a condition of probation may be operative even though compliance with one or more other conditions is not possible. But this hardly means the conditions of probation apply immediately upon the issuance of the sentencing order even before the probation itself has actually started. And, to be sure, this conclusion finds no support in the text of either section 9754(b) or section 9763(b), which concern the substance, not the timing, of probation conditions.

[18] *See Commonwealth v. Mitchell*, 955 A.2d 433 (Pa. Super. 2008); *Commonwealth v. Hoover*, 909 A.2d 321 (Pa. Super. 2006); *Commonwealth v. Castro*, 856 A.2d 178 (Pa. Super. 2004); *Ware*, 737 A.2d 251; *Commonwealth v. Miller*, 516 A.2d 1263 (Pa. Super. 1986); *Commonwealth v. Dickens*, 475 A.2d 141 (Pa. Super. 1984).

disposition of a legal question governed by a statute requires analysis of said statute. In lieu of the appropriate statutory analysis, the panel instead principally relied on nonbinding decisions from other jurisdictions not involving section 1371. *See Wendowski*, 420 A.2d at 630. Moreover, as discussed, the single Pennsylvania case cited by the *Wendowski* panel, *Vivian*, does not support its holding.

In *Dickens*, the panel reasoned "the decision in *Wendowski* is not contrary to statutory law in Pennsylvania" because the provision of "42 Pa.C.S. §9771(b), which authorize[s] a court to 'revoke an order of probation upon proof of the violation of specified conditions of the probation,' do[es] not prevent revocation for violation of a condition which occurs prior to the specific probation being revoked." *Dickens*, 475 A.2d at 144, *quoting* 42 Pa.C.S. §9771(b). On the contrary, as discussed, in specifying there must be a violation of the "probation" itself, as opposed to the "order of probation," before probation may be revoked, this language does indeed foreclose anticipatory revocation. In any case, other language in section 9771 – the pointed omission of revocation from subsection (a)'s enumeration of court actions which may be taken at "any time," the requirement in subsection (b) of court consideration of the defendant's time spent serving probation, the mandate in subsection (d) for court consideration of the defendant's conduct while on probation – clearly precludes the anticipatory revocation of probation.

The *Miller* panel rejected the argument *Wendowski* and *Dickens* "should be re-examined in light of 42 Pa.C.S. §9771(d)" because "[t]he purpose of this section of the statute is to require a hearing before a court revokes probation." *Miller*, 516 A.2d at 1265. But our rules of statutory construction forbid disregarding the clear language of a statute under the pretext of pursuing its "spirit," or purpose. *See* 1 Pa.C.S. §1921(b). Again, the

plain text of subsection (d) obliges the revocation court to consider "evidence of the conduct of the defendant **while on probation**." 42 Pa.C.S. §9771(d) (emphasis added). There cannot be such evidence unless and until the probationary term has actually commenced.

The remaining decisions in the *Wendowski* line offer no fresh analysis, but rather simply rely on prior flawed precedent. Specifically, *Ware* relies on *Wendowski* and *Dickens*, *see Ware*, 737 A.2d at 253-54; *Castro* relies on *Ware*, *see Castro*, 856 A.2d at 180 n.1; *Hoover* relies on *Miller* and *Wendowski*, *see Hoover*, 909 A.2d at 323; and *Mitchell* relies on *Miller* and *Hoover*, *see Mitchell*, 955 A.2d at 435 n.2.

It is true, as the dissent, Commonwealth, and *amicus* each emphasize, that since *Wendowski,* the legislature has renumbered and amended section 9771 without materially changing the statute, but we do not presume legislative acquiescence in anticipatory revocation. The rules of statutory construction call for the presumption "[t]hat when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language." 1 Pa.C.S. §1922(4). Importantly, however, this presumption, like any consideration beyond the statutory text, is operative only when the statute is unclear or ambiguous. *See Commonwealth v. Dickson*, 918 A.2d 95, 108 n.15 (Pa. 2007) (plurality) ("§ 1922(4) . . . speak[s] to one of several means by which we discern legislative intent when the language in question is less than conclusive."). Where, as here, "the legislative intent [is] manifest in its most trustworthy source, the statutory language, we cannot simply fall back on an attenuated assertion of *sub silentio* legislative acquiescence[.]" *Id.* at 101.

The dissent "agree[s] that the plain language of the statute controls[,but] assuming *arguendo* that the language of the statute is ambiguous, . . . cannot imagine a more definitive example of legislative acquiescence than here." Dissenting Opinion at 10. This overstates things considerably. Again, by its express terms, section 1922(4) is limited to decisions by the "court of last resort." 1 Pa.C.S. §1922(4). The court of last resort in Pennsylvania is, of course, the Pennsylvania Supreme Court. Thus, the "definitive" example of legislative acquiescence would be legislative silence in response to a series of decisions by this Court. Here, on the other hand, the *Wendowski* line of cases consists exclusively of three-Judge panel decisions of the Superior Court; this Court has never once endorsed anticipatory revocation. We acknowledge this Court's decision years ago endorsing an extension of the presumption of legislative acquiescence to Superior Court decisions. *See In re Estate of Lock*, 244 A.2d 677, 682-83 (Pa. 1968). Yet extending section 1922(4) beyond its terms to Superior Court cases pivots on the questionable notion that this Court's determination not to review a case reflects its endorsement of the panel's decision. This Court, however, may deny allowance of appeal for reasons wholly unrelated to its agreement with the outcome below. *See Dickson*, 918 A.2d at 107 n.14 ("A denial [of allocatur] may merely reflect that the particular controversy was not the proper vehicle for deciding a question of law or that it was not presented in the proper posture.") (internal citation and quotation omitted; brackets in original). While permissible under *Lock*,[19] a presumption based solely on Superior Court case law is far from

---

[19] Although *Lock* has not been overruled, and we decline to do so here since we did not grant allowance of appeal on the question and the abrogation of *Lock* is not addressed in the briefing, we nonetheless note, as we have previously, that there are "valid concerns regarding the soundness of" this decision, *Dickson*, 918 A.2d at 108 n.15, including its

"definitive," and falls well short of resolving any purported ambiguity in section 9771 in favor of the Commonwealth, especially given the applicability of the *in pari materia* doctrine and rule of lenity.

We disagree our plain language construction of section 9771 will give a "free pass to [defendants] who reoffend" while on parole but before their consecutive probation sentences begin, or permit reoffenders to "violate the law with impunity[.]" Commonwealth's Brief at 29; *Amicus* Brief at 18; *see also* Dissenting Opinion at 11 ("I also agree with the Commonwealth that it is an absurd result to suggest that a defendant could commit a new crime with impunity[.]"). For one thing, a defendant who violates his county or state parole by committing a new crime is subject to revocation of his parole and recommitment to prison. *See* 42 Pa.C.S. §9776(e); 61 Pa.C.S. §6138(a). In addition, he is subject to separate punishment for his new offense. In this case, for example, Rosario has been sentenced to 25 to 50 years' imprisonment for his new crimes.

The dissent maintains revocation of parole and recommitment to prison and a separate punishment for the new offense do not "rectify the true problem that, by committing a new crime, the defendant has shown a probationary term is not a sufficient method of rehabilitation." Dissenting Opinion at 11. But of course a parolee recommitted to prison, or a defendant sentenced to a new term of imprisonment, is not placed on probation; he is incarcerated. Under either scenario "the true problem" of a criminal being placed on probation despite being demonstrably unsuited for supervised release is nonexistent. We are similarly unmoved by the dissent's hypotheticals of a defendant who

tension with the plain language of section 1922(4) and reliance on the dubious assumption that this Court's denial of *allocatur* indicates agreement with the court below.

"assault[s] a corrections officer or fellow inmate while incarcerated" and "a defendant convicted of stalking [who] go[es] directly to his victim's home the day he is released on parole[.]" *Id.* at 12 n.9. In these circumstances, as in the present case, we see "little practical effect to revocation of probation." *Id.* The prisoner's assault would presumably adversely impact his parole eligibility and subject him to fresh convictions and sentences. Similarly, the convicted stalker would presumably be subject to parole revocation and reincarceration as well as punishment for any new offenses stemming from his contact with the victim. Under these hypothetical examples, as in the case *sub judice*, the defendants will not enjoy immunity for their crimes, and public safety will not be compromised.

We disagree as well with the Commonwealth's argument that construing section 9771 to bar anticipatory revocation reads words into the statute. Section 9771's existing plain language requires court consideration of the defendant's conduct while on probation and time spent serving probation. *See* 42 Pa.C.S. §9771(b),(d). These requirements clearly limit the timing of revocation to the post-commencement-of-probation context. Indeed, interpreting section 9771 to permit anticipatory revocation would ignore these provisions and read them right out of the statute, in contravention of the rule of construction that "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. §1921(a).

It is not correct, as *amicus* contends, that in the absence of the authority to anticipatorily revoke probation, a sentencing court which "believes that a state sentence might be warranted" is hamstrung to impose such a sentence without giving the defendant the opportunity to demonstrate he "can be compliant with a lesser level of supervision."

*Amicus* Brief at 19. On the contrary, the court can impose a pure probation sentence or a split sentence involving a term of incarceration of less than two years and a period of probation. *See* 42 Pa.C.S. §9721(a). In either case, if the defendant subsequently violates the probation, the court can then revoke the probation and impose a state sentence. *See* 42 Pa.C.S. §9771(b). Hence, a sentencing court can defer a state sentence and retain the discretion to order state confinement upon a future violation of probation without the extra-statutory power to anticipatorily revoke probation.

Finally, while we recognize there was widespread reliance on *Wendowski* and its progeny for many years up until the recent *Simmons* decision, and the abrogation of anticipatory revocation represents a significant change in sentencing practice, these considerations do not dissuade us from concluding the procedure is illegal. Reliance interests are pertinent to the question of whether to adhere to *stare decisis*. *See Commonwealth v. Alexander*, 243 A.3d 177, 196 (Pa. 2020). *Stare decisis* is not implicated here; we are addressing the legality of anticipatory probation revocation as a matter of first impression for this Court. What's more, no amount of past prevalence may justify the persistence of a practice that is clearly illegal. *See Alexander*, 243 A.3d at 200 ("[T]he Commonwealth is clearly not entitled to the persistence of an illegal practice."). Such is the case here. Pursuant to the plain language of section 9771, it is clear that the anticipatory revocation of probation is unlawful and must accordingly be prohibited, irrespective of whether "[t]he rule established in *Wendowski* developed into a routinely enforced principle that was employed by our trial and appellate courts for over four decades." *Amicus* Brief at 16.

**IV.**

For the foregoing reasons, we hold the anticipatory revocation of a probation sentence that has yet to start is illegal under Pennsylvania law. Accordingly, the Superior Court's order is affirmed.

Chief Justice Todd and Justices Donohue and Wecht join the opinion.

Justice Mundy files a dissenting opinion in which Justice Brobson joins.